## STATE *vs.* THOMAS JOHNSON

An indictment for rape, charging that the assault was violent and felonious, and that the ravishing was *felonious* and *against the will* of the prosecutrix, is sufficient.

The name of a person ravished was charged in the indictment as *Susan,* while her real name was *Susannah,* though she was generally called Susan; *Held* to be no ground of objection.

Evidence of the name of a prisoner as given by him when brought before the examining magistrate is admissible, though it do not appear whether the examination was reduced to writing or not.

Upon a criminal trial, it is proper to ask a witness to look around the Court room and point out the person who committed the offence.

Where the record shows that, after the jury returned a verdict of guilty in a capital trial, the prisoner moved for a new trial, &c., it was not absolutely essential that the Judge, before pronouncing sentence, should ask the prisoner, in the usual formula, whether he had anything to say why sentence of death should not be pronounced against him.

[*State* v. *Jacobs,* 5 Jon, 259, cited and approved.]

RAPE tried before *Cloud, J.,* at Spring Term, 1872, of the Superior Court of DAVIDSON.

The indictment charged that the prisoner, a colored man, " on the 16th day of September, 1871, with force and arms, at and in the county aforesaid, in and upon one Susan Thompson, in the peace of God and the State then and there being, violently and feloniously did make an assault, and her, the said

Susan Thompson, against the will of her, the said Susan Thompson, then and there feloniously did ravish and carnally know," &c.

The evidence was that Susannah was the christian name of the prosecutrix, though she was called Susan and Susy, but mostly Susan. A witness stated, in reply to a question by the Solicitor, that the prisoner when brought before the examining magistrate was asked his name, and gave it as Thomas Johnson. There was no evidence that the examination before the Justice was not reduced to writing, and the prisoner's counsel objected to the evidence.

The prisoner was seated within the bar, on a bench used as a prisoner's dock. The prosecutrix, on her examination, was asked to look around the room and see if she could point out the man who committed the rape upon her. She did so and pointed to the prisoner, saying, "That is the black rascal." This evidence was objected to.

The jury returned a verdict of guilty. A motion for a new trial was made and the rule discharged. His Honor thereupon proceeded to pronounce sentence upon him, without asking whether he had anything further to say, why sentence of death should not be pronounced against him.

The prisoner appealed.

*Attorney General, Battle & Son.,* and *Dupre,* for the State. *Bailey,* for the defendant.

READE, J. In the argument here, there were several objections taken to the sufficiency of the record, which have been obviated by the return of a more perfect record upon certiorari. There still remains to be considered the following objections, made by the prisoner :

1. The indictment does not charge that the prisoner did *forcibly* and feloniously ravish ; but only that he did "feloniously ravish," omitting the word *forcibly.*

STATE *v.* JOHNSON.

There is no doubt that the indictment must charge the act to be done forcibly; although that particular word need not be used. Any equivalent word will answer—especially since our statute, which forbids the staying of judgment or proceedings in criminal cases, on account of any "informality or refinement, if, in the bill, sufficient appear to enable the Court to proceed to judgment." Rev. Code ch. 35, sec. 14. It is always best, however, to observe established forms; and any unnecessary departure, or experiment, is decidedly reprehensible. It makes the administration of justice uncertain, tedious and expensive. The indictment does charge that the *assault* was "violent," but this is not repeated, when it comes to charge the act of ravishing. And the authorities are, that, although ravishing would seem to imply force, yet it is necessary to charge force expressly, in some appropriate language. In our case the indictment charges, that the assault was violent and felonious, and that the ravishing was felonious and, "*against her will.*" This is sufficient under our statute, *supra*.

2. The indictment charges the name of the woman ravished as, "Susan." The evidence was that her name was, "Susannah," but that she was called indifferently, Susan, Susy, but most people called her *Susan.*" There is no force in this objection. It would seem that Susan was the name by which she was *generally* known. At any rate, *idem sonans.*

3. Declarations which the prisoner made as to his name, Thomas Johnson, when he was before the magistrate, not in writing.

This objection is taken upon the ground that it does not appear that the examination was not in writing, and that it is to be presumed that it was, and, therefore, the writing would be the better evidence. A sufficient answer is, that it does not appear that his declarations were a part of his examination at all. They are to be taken, therefore, as outside of his examination, and as being voluntary.

4. The prosecutrix was asked by the Solicitor to look around the court room and see if she could see the man who committed the rape on her, and having done so, she pointed to the prisoner and said, "That is the black rascal." It was insisted, that this was to make the prisoner furnish evidence against himself; that he had the right to be there and " confront his accusers," and that, for the State to take advantage of his presence to have him pointed out and identified, placed him in the dilemna of either abandoning his constitutional right of being present, or of affording the means of his conviction by its exercise.

The objection is specious, nothing more. It is true that the State will not, either directly or indirectly, compel the prisoner to furnish evidence against himself; but it is equally true that the State will not allow the prisoner to deprive the State of evidence to which it is entitled. One of the first things which the State has to do, is to have the prisoner *identified* as the person charged, and as the person who committed the offence. Not merely one of that *name*, but the very person present. What would it avail for the witness to say, John Smith did it, unless the witness can point out which John Smith is meant? In many cases the *only* way, and in every case the *best* way to identify a person is to have him present and pointed out. This is a right which the State claims, not only to enable it to punish the *right* man, but, what is regarded as of at least equal importance, to avoid punishing the *wrong* man. In support of his objection the prisoner relied upon *State* v. *Jacocks*, 5 *Jones* 259, in which it was decided that the defendant could could not be compelled to exhibit himself to the jury, " that they might see whether he was within the prohibited degree of color." But that case is not like this. There, he was compelled to exhibit himself to the jury, that the " jury might determine, by inspection, his quality and condition—his blood or race." That was a matter to be proved by the oath of witnesses who knew the facts, or, it may be, by experts. And although the defendant could not be compelled to exhibit him-

self to the jury, yet it would be competent for witnesses, who knew him, to speak of his color and of any facts within their knowledge, and to point to him as being the identical person of whom they were speaking.

The rule is, that the prisoner is entitled to be present at his trial, and at every stage of the trial, that he may hear all that is charged against him, and to confront his accusers and make his defence. And the State has the right to *have* him present, both for purposes of identification and to receive punishment, if found guilty.

5. Another objection is, that after verdict, and before judgment, the prisoner was not asked, if he had anything further to say why sentence of death should not be pronounced.

There is, in capital trials, much that is formal, and intended only to make them impressive and solemn; but even these purposes are useful, and such ceremonies ought not to be neglected. It is, however, not a matter of formality, but of necessity, that the prisoner should be informed that his case is not closed by the verdict of the jury against him, and that he may still urge any reason he may have why he should not suffer death. And until it appears that he has been so informed, we cannot allow that he shall be punished. If it appears, in this case, that the prisoner has not been informed of his rights, the effect would not be to discharge the prisoner, because there stands the verdict of guilty against him; but it would be to arrest the judgment, until he is informed of his rights. So that, if the objection were well founded in fact, the effect would be, that we would certify the case back again, together with our opinion, to the end that the prisoner might be asked, whether he has anything further to say why sentence of death should not be pronounced against him. But we are constrained to say, that we do not think the objection well founded in fact. There is no mere formula in which the prisoner should be informed of his rights; it is sufficient that it appears that he was informed that the verdict did not conclude

him from urging anything he might think necessary. The record shows, that after verdict, the prisoner did move for a new trial, and for a *venire de novo*, and that the Court considered his motions and overruled them. So that it not only appears that the prisoner was *informed* that he might move, but he *did* move, such reasons as he had. It is true that it does not appear that he made any motion in arrest of judgment, or that he was informed that he might do so; nor has it ever been the custom to inform the prisoner *what* he might do, but only that he would be heard in whatever he had to say. So, it would seem, that, after the prisoner has been heard in all that he has to say, it would be mere ceremony to ask him if he has anything further to say. It is also to be considered, that the prisoner has had, in this Court, the benefit of everything that could be said in arrest of judgment, as if he had said it below. When the prisoner shall be again brought to the bar in the Court below, anything further he may have to say may be heard; for instance, a pardon.

There is no error. This will be certified to the end that there may be judgment and execution according to law.

PER CURIAM.                    Judgment affirmed.