### STATE v. EULA CAGLE.

(Filed 24 November, 1954.)

**1. Criminal Law § 63: Judgments § 20a—**

During the term a judgment is *in fieri,* and the judge has the discretionary power to make such changes and modifications in the judgment as he may deem wise and appropriate for the administration of justice. In the exercise of this power the court may strike out a suspended judgment, remit the fine paid thereunder, and enter a different sentence in conformity with law.

---

STATE *v.* CAGLE.

---

**2. Criminal Law § 62a—**

A defendant may be sentenced to the Central Prison only upon conviction of a felony. Sec. 3 of Art. XI of the Constitution of North Carolina. G.S. 148-28.

**3. Same—**

In sentencing a *feme* defendant convicted of a misdemeanor, the court may designate the place of imprisonment as the quarters provided by the State Highway and Public Works Commission for women prisoners, G.S. 148-27, and upon a finding that such quarters are maintained in the Central Prison at Raleigh, order defendant's imprisonment in such quarters at that place.

**4. Criminal Law § 77d—**

The presumption is that the record as it appears is true.

**5. Criminal Law § 63: Judgments § 20a—**

After the expiration of the term, the Superior Court has the power at term time to make its records speak the truth by correction of clerical errors or correction of the judgment to make it express correctly the action taken by the court. This power does not extend to the correction of errors of law. Such power must be exercised at term time in the county, and the judge may not correct such errors while holding court in another district.

THIS case comes to this Court upon its writ of *certiorari* allowed and issued upon petition of Eula Cagle, defendant in two criminal prosecutions Numbers 716 and 666 against her in Superior Court of Haywood County, North Carolina, to review the order of *Patton, Special Judge,* denying her application in *habeas corpus* proceedings for discharge from alleged illegal imprisonment in Women's Division of Central Prison at Raleigh, N. C., under judgments entered in said prosecutions at November Term 1953 of said court.

The record proper and findings of fact made by Patton, Judge, to whom the application for *habeas corpus* made to Moore, Judge, was transferred, are substantially these:

I. Two criminal prosecutions begun upon warrants issued out of courts of Justices of the Peace of Haywood County, charging defendant with violations of the prohibition laws of North Carolina on 29 July, 1953, and on 8 October, 1953, respectively, on which, probable cause being found, she was bound over to Superior Court of said county for trial.

In Superior Court at November Term, 1953, two true bills of indictment were found as follows: Numbers 716, in four counts charging that defendant did, on 29 July, 1953, unlawfully and willfully (1) "have and keep intoxicating liquors in her possession for the purpose of sale," (2) "have in his (her) possession intoxicating liquors for beverage purpose," (3) "transport intoxicating liquors," and (4) "sell intoxicating liquors for gain."

And in Number 666, charging in four counts that defendant and another did commit on 8 October, 1953, like offenses to those just detailed in respect of the bill in Number 716.

And the record discloses that the Honorable Susie Sharp, one of the special judges of the Superior Court, was duly commissioned to hold the regular two-weeks term of the Superior Court for the County of Haywood, beginning 23 November, 1953, for the trial of criminal and civil cases.

At said November Term, 1953, of Superior Court defendant pleaded guilty in each of said cases to unlawful possession of intoxicating whiskey for the purpose of sale. Thereupon at said term the court pronounced judgments as follows:

In Number 716 "that the defendant be confined in the Women's Division of the Central Prison for a period of 12 months. The prison sentence is suspended for a period of five years upon the good behavior of the defendant and upon the payment of a fine of $300.00 and the costs."

And in Number 666 "that the defendant be confined in the Women's Division of the Central Prison for a period of 12 months. This sentence to begin at the expiration imposed in No. 716. The prison sentence is suspended for a period of five years, and the defendant is placed on probation on the following terms and conditions:

"1. That she pay the costs. 2. That she dispose of the property known as Mountain View, and that she not reside there in the future. 3. That she not operate a cafe or any place of business to which the public is invited, for a period of five years. 4. That she have no intoxicating beverages of any sort in her possession at any time."

II. On 27 November, 1953, "Capias Instanter" issued by Clerk of the Superior Court to Sheriff of Haywood County, commanding him to take and have Eula Cagle before Judge Susie Sharp, at the courthouse in Waynesville, Instanter, "then and there to answer the charge of the State against her on an indictment for violating probation."

The Minute Docket for the same term shows the following additional entry made by her Honor Susie Sharp, Judge Presiding:

"November Term 1953

"State of North Carolina
"Haywood County—

666-716—State v. Eula Cagle

"The judgment heretofore entered is stricken out and the following is entered in lieu thereof: (The Clerk is ordered to refund to the defendant the fine and costs heretofore paid).

"In No. 666 it is the judgment of the court that the defendant be confined in the Women's Division of the Central Prison for a period of two years.

"In No. 716, it is the judgment of the court that the defendant be confined in the Central Prison at Raleigh for a period of two years. This sentence to begin at the expiration of the sentence imposed in No. 666. This prison sentence is suspended for a period of five years upon the good behavior of the defendant, and upon the further condition that she at no time have in her possession or on her premises any alcoholic beverages, and that she not operate or work in a cafe.

"The defendant gives notice of appeal from the court's judgment, and upon the changing of the sentence. Appearance bond is fixed in the sum of $7000.00."

III. At July Term, 1954, of Superior Court of Haywood County, defendant, having failed to perfect her appeal, motion of Solicitor for the State that the appeal be declared abandoned was allowed, and commitment was ordered to be issued to put into effect the sentence in case No. 666. Pursuant thereto a duly executed and authenticated commitment for the above mentioned was issued by the Clerk of said Superior Court on 21 July, 1954.

IV. And the record discloses that thereafter on 27 July, 1954, the said Eula Cagle applied to the Honorable Dan K. Moore, a Judge of Superior Court of North Carolina, for a writ of *habeas corpus* to the end that inquiry be made into legality of her imprisonment (for reasons stated, to pertinent portions of which reference is hereinafter made in this opinion).

Writ of *habeas corpus,* directed to Director of Central Prison, Women's Division, Raleigh, North Carolina, was issued ...... day of July, 1954, commanding that the body of Eula Cagle be produced before Judge George B. Patton, at the courthouse of Cleveland County, in Shelby, North Carolina, at 2 o'clock on 2 August, 1954, together with a return of the writ, etc. By consent the cause was transferred to Franklin in Macon County, North Carolina, for hearing at stated hour on 6 August, 1954. Return to the writ signed by "Superintendent of Women's Prison, Raleigh, North Carolina" verified before a notary public was filed. Accordingly, the matter came on for hearing, and was heard before Judge Patton, Eula Cagle being represented by Charles Fortune and F. Piercy Carter, members of the Asheville Bar, and the Superintendent by E. O. Brogden, Jr.

Thereupon the court, having heard all the evidence presented and having examined the court records in the Eula Cagle cases, hereinbefore detailed, entered judgment under date of 19 August, 1954, denying the relief prayed. And thereupon the petitioner was remanded to the custody wherein she was restrained when the writ was issued.

To the entry of this judgment the petitioner, Eula Cagle, through her counsel, excepted and gave notice in open court of her intention to petition the Supreme Court for a writ of *certiorari*—further notice being waived.

(Note: The record now before this Court under certificate of Clerk of Superior Court also shows that on 23 August, 1954, Judge Susie Sharp signed what purports to be an "Order *Nunc pro tunc*," in *State v. Cagle,* attempting to correct the minutes of the Clerk of Superior Court of Haywood County as to the place of imprisonment for the defendant in the several judgments entered by her at November Term, 1953, of Superior Court of Haywood County.)

*R. Brookes Peters and E. O. Brogden, Jr., for respondent, appellee.*
*Charles M. Fortune and F. Piercy Carter for defendant, appellant.*

WINBORNE, J.    These are questions now presented for decision:

1. Where at a regular term of Superior Court a defendant in a criminal prosecution has pleaded guilty to a misdemeanor charged therein, and the trial judge has pronounced judgment sentencing defendant to confinement in prison for a specific term and suspends the prison sentence for a certain length of time "upon the good behavior of the defendant" and upon the payment of a fine and the costs, and the defendant has paid the fine and costs, may the judge during the same term strike out the judgment, and order refund to defendant of the amount of the fine and costs paid, and enter judgment that defendant be confined in prison for a given term?

2. If so, may the trial judge designate the women's division of the Central Prison at Raleigh, N. C., as the place of imprisonment?

3. If the minutes of the Clerk incorrectly record the place of imprisonment designated in the judgment, may the minutes be corrected to speak the truth?

4. If so, may the trial judge, after the expiration of the term, and while holding a term of court in another county, order the correction of the minutes *nunc pro tunc?*

The first question merits an affirmative answer. For until the expiration of the term of court, that is during the term, the judgments of the court are *in fieri,* and the judge has the power, in his discretion, to make such changes and modifications in them as he may deem wise and appropriate for the administration of justice. *S. v. Godwin,* 210 N.C. 447, 187 S.E. 560; *Hoke v. Greyhound Corp.,* 227 N.C. 374, 42 S.E. 2d 407; *S. v. Gross,* 230 N.C. 734, 55 S.E. 2d 517.

In the *Gross case, supra,* this Court in opinion by *Seawell, J.,* declared that "as the term of court had not expired the whole matter was *in fieri* and the right of the judge to modify, change, alter or amend the prior judgment, or to substitute another judgment for it, cannot be questioned," citing cases.

The second question in the light of the provisions of Sec. 3 of Art. XI of the Constitution of North Carolina, implemented by G.S. 148-28, is answered "No."

It is provided in Sec. 3 of Art. XI of the Constitution that "the General Assembly shall . . . make provision for the erection and conduct of a State's Prison or penitentiary, at some central or accessible point within the State." And the General Assembly has declared in G.S. 148-28 entitled "Sentencing of prisoners to Central Prison" that "the several judges of the Superior Court are hereby given express authority in passing sentence upon persons convicted of a felony . . . to sentence such person to the Central Prison at Raleigh . . ." Thus it appears that only persons convicted of felonies may be sentenced to the Central Prison. However, the General Assembly of 1933 created the State Highway & Public Works Commission, P. L. 1933, Chap. 172, Sec. 2, and vested in it the control and custody and management of, among others, all State Highway prison camps, and the Central Prison at Raleigh. And at the next session the General Assembly passed an act, P. L. 1935, Chap. 257, providing that "the State Highway & Public Works Commission may provide within the bounds of the Central Prison at Raleigh, or elsewhere in the State, suitable quarters for women prisoners, and arrange for work suitable to their capacity," and that "the several courts of the State may assign women convicted of offenses, whether felonies or misdemeanors, to such quarters so provided," etc.

However, when the above was incorporated into the General Statutes, G.S. 148-27, it was made to read that: "The State Highway & Public Works Commission may provide suitable quarters for women prisoners and arrange for work suitable to their capacity," omitting any reference as to where such quarters should be provided. And in the case in hand there is no finding that the "quarters for women" provided by the State Highway & Public Works Commission at the time of the judgments here in question were entered, are in the Central Prison at Raleigh.

Now as to the third and fourth questions, the presumption is that the record as it appears is true, *S. v. Brown,* 203 N.C. 513, 166 S.E. 396. But the Superior Court at term has the power to correct its records to speak the truth. Such power extends to clerical errors or to make the judgment express correctly the action taken by the court, but it does not extend to the correction of errors of law. *In re Will of Hine,* 228 N.C. 405, 45 S.E. 2d 526. See also *S. v. Brown, supra,* and cases cited. *Ragan v. Ragan,* 212 N.C. 753, 194 S.E. 458; *Land Bank v. Cherry,* 227 N.C. 105, 40 S.E. 2d 799, and cases cited.

In the *Ragan case* it is said that it is the duty of the court below, and not ours, on application, or *ex mero motu,* to correct the record to speak the truth, and to make entries *nunc pro tunc* that were certainly intended

to be made, but omitted by mistake, accident or inadvertence of the court.

Hence, if the place of imprisonment designated in the judgments is the quarters provided by the State Highway & Public Works Commission for women prisoners, a fact to be found by the Superior Court, the judgments would not be subject to attack, and it would not be necessary to correct the minutes.

But if the place of imprisonment designated in the judgment or shown in the minutes, is not the quarters provided by the State Highway & Public Works Commission for women prisoners, the Superior Court in term, upon motion or *ex mero motu,* may correct the judgment or minutes by designating the proper place. For determination of the truth of the matter the case must be remanded to Superior Court to be heard at term. This does not work a new trial of the case, but is simply an order to remand to have the correction properly made. *S. v. Brown, supra.*

It may be added that the order signed by Judge Sharp is without force and effect. *S. v. Whitley,* 208 N.C. 661, 182 S.E. 338; *Bisanar v. Suttlemyre,* 193 N.C. 711, 138 S.E. 1. On the date she purported to act, she had no commission to hold a term of court in Haywood County, but was commissioned to hold a one-week term in Buncombe County for the trial of criminal and civil cases in lieu of Moore, J., by order of the *Chief Justice* under date of 19 June, 1954. Nevertheless, the purported order signed by her may be helpful to the court in determining the proper place of imprisonment as intended in the judgment, and in correcting the minutes, for which purpose it may be considered as a certificate in respect thereto.

The petitioner also complains that she has been prejudiced by the failure to perfect her appeal. As to this, it is sufficient to say that a careful consideration of the whole case fails to reveal any matter prejudicial to her, and not considered by this Court.

The case will be remanded for further proceedings in accordance herewith.

Remanded.