STATE v. JIMMIE FLOYD, ALIAS JOHNNY FLOYD.

(Filed 7 June, 1957.)

**1. Criminal Law § 81c(2)—**

Where the charge of the court, construed contextually, is not prejudicial, an assignment of error thereto cannot be sustained.

**2. Constitutional Law § 35—**

The constitutional privilege against self-incrimination applies only to the compulsion of a defendant to testify against himself, and not to testimony voluntarily given, and further, does not preclude witnesses from testifying as to distinguishing marks on defendant's body.

**3. Same—**

Witnesses for the State had testified as to a small scar near the culprit's left eye, a small mole on his left ear, and gold fillings in his teeth. Upon return of the jury into the courtroom in disagreement as to defendant's identity as the culprit, the court permitted a juror, with defendant's consent, to examine defendant's body for the distinguishing marks. *Held:* Defendant's exception to the proceedings is untenable.

**4. Criminal Law § 62a: Intoxicating Liquor § 9g—**

Possession of non-taxpaid whiskey, possession of such whiskey for the purpose of sale, and the selling of such whiskey, are misdemeanors, and sentence of defendant, upon conviction, to be confined in the State's prison is not sanctioned by law, and the cause must be remanded for proper sentence. Constitution of North Carolina, Art. XI, Section 3, G.S. 148-28.

APPEAL by defendant from *Williams, J.,* at December Criminal Term 1956, of ROBESON.

Criminal prosecution upon a bill of indictment containing three counts charging (1) that on 10 October, 1956, defendant did unlawfully have in his possession a quantity of non-taxpaid intoxicating

whiskey, to wit: one pint; (2) that on same date defendant did unlawfully have and possess for the purpose of sale a certain quantity of non-taxpaid intoxicating whiskey, to wit: one pint; and (3) that on same date defendant did unlawfully sell a certain quantity of non-taxpaid intoxicating whiskey, to wit: one pint—each against the form of the statute, etc.

Defendant pleaded not guilty.

Upon trial in Superior Court the State offered as a witness one James E. King, an agent of the Alcohol and Tobacco Tax Unit of the United States Treasury Department, who, on direct examination, testified, in substance, that on 10 October, 1956, he with an Indian male went from Lumberton out Highway 41 to the Meadow Road and turned left there and went on approximately one mile to a wooden frame house on the left side of the road, and went into the kitchen of this residence where he saw Johnny or Jimmy Floyd; that he, the witness, bought from and paid defendant for, a pint of non-taxpaid whiskey which defendant poured out of a half-gallon fruit jar.

This witness, under cross-examination, testified, among other things, that the man he bought liquor from was named Johnny Floyd, that it is Johnny or Jimmy Floyd; that as to his physical description on 10 October, he was light skinned, had a small scar near his left eye, had some gold on his front teeth, and a small mole on the lobe of his left ear.

At the conclusion of testimony of this witness the State rested its case.

Thereupon defendant offered testimony of several witnesses tending to show as an alibi that another lived in the house the State's witness described as that of defendant; that defendant is named Jimmy; and that he was elsewhere at the time of the offenses charged.

The case was submitted to the jury under the charge of the court to which certain exceptions are taken, as hereinafter recited. And after some deliberation, the jury returned to the courtroom and the following proceedings were had:

"(The Court: Gentlemen of the Jury, have you agreed on a verdict?

"Juror: No sir.

"The Court: I do not care to know how you stand, but would like to know how you are divided.

"Juror: We are divided on the identity of the man.

"The Court: Numerically speaking, how are you divided?

"Juror: Eight to four, Sir.

"The Court: Is there any additional instructions you desire?

"Juror: There is. The jury would like to ask the Court if we could examine the markings on this defendant's face?

"The Court: The court inquired of the defendant's counsel if there was any objection to the jury looking at the defendant.

"Defense Counsel: No objection. Come around here boy and let them look at you.

"Juror: There was a mole on his ear and scar, and it was said he had some gold in the front teeth. Has he got that?

"The Defendant (opening his mouth, indicating gold fillings) I had two, but one is now gone. (The defendant put his finger in his mouth on a gold filling).

"Juror: Got a mole on your ear?

"Counsel for Defendant: Take a look at it. It doesn't look like a mole to me. (The juror then walked over to defendant, then stood behind him, looked closely at his ears, and felt of one of his ears, but said nothing else.

"The Court: All right, gentlemen, you may retire and resume your deliberations.)"

The defendant excepts to the foregoing proceedings set out in parentheses. Exception No. 4.

Verdict: Guilty on all counts as charged in the bill of indictment.

Judgment: That the defendant be confined in the State's Prison for a term of twelve months.

Defendant appeals therefrom to Supreme Court, and assigns error.

*Attorney-General Patton and Assistant Attorney-General McGalliard for the State.*

*F. D. Hackett and Robert Weinstein for Defendant Appellant.*

WINBORNE, C. J. The first assignment of error brought up for consideration is based on exceptions to portions of the charge lifted out of text, pertaining to the subject of alibi. But considering the charge contextually it does not appear that there is prejudicial error. What is said by this Court, in this respect, in *S. v. Bridgers,* 233 N.C. 577, 64 S.E. 2d 867, in *S. v. Minton,* 234 N.C. 716 (at 726), 68 S.E. 2d 844, and in *S. v. Cephus,* 239 N.C. 521, 80 S.E. 2d 147, is pertinent here. There this Court considered that error prejudicial to defendant did not appear. And in both the *Bridgers* and *Minton cases* suggested forms to be applied are set forth, and need not be repeated now.

The next assignment of error is predicated upon exception four to the proceeding had on the return of the jury for further information relating to identity of defendant.

Defendant contends that here he was put on the spot, so to speak, that as a result of the court's inquiry directed to the jury he was required to give evidence against himself or risk the ire of the jury by his refusal.

This position is not well taken for these reasons: While in this respect, as stated in Stansbury's North Carolina Evidence, sec. 57, "the

privilege against self-incrimination, which finds expression in the Constitution and statutes of North Carolina, protects a witness from being compelled to give testimony to show his guilt of a criminal offense for which he may be prosecuted under the laws of the State . . ., the privilege is one against being compelled to testify. It furnishes no protection against the use of testimony which was voluntarily given." *S. v. Simpson*, 133 N.C. 676, 45 S.E. 567.

Indeed in *S. v. Riddle and Huffman*, 205 N.C. 591, 172 S.E. 400, this headnote reveals the ruling of the Court in this manner: "The constitutional guarantee that a defendant shall not be compelled to testify against himself, Art. 1, Section 11, does not preclude testimony by a witness as to marks on defendant's body tending to identify him as the perpetrator of the crime." *S. v. Grayson*, 239 N.C. 453, 80 S.E. 2d 387, and cases cited. Also in *S. v. Vincent*, 222 N.C. 543, 23 S.E. 2d 832, opinion by *Stacy, C. J.*, this Court held that the State has a right to have a prisoner identified, and there was no error, in a prosecution for rape, for the court to require the defendant to stand up, while prosecutrix was on the witness stand, and allow her to identify him as the man who assaulted her on the night in question. And in both *S. v. Riddle and Huffman, supra*, and *S. v. Vincent, supra*, the Court distinguishes the case of *S. v. Jacobs*, 50 N.C. 259, relied upon by defendant. In the *Vincent case* it is said that: ". . . the identity of the defendant, and not his status or degree of color was at issue," citing *S. v. Garrett*, 71 N.C. 85. It is pointed out that under *S. v. Johnson*, 67 N.C. 55, it was held that the State had a right to have the prisoner identified as the person charged.

Too, quoting from *S. v. Tucker*, 190 N.C. 708, 130 S.E. 720, it is stated: "It was the right of the State to have the defendant present at the trial, both for the purpose of identification and to receive punishment if found guilty . . . and if a defendant should persist, for example, in wearing a mask while on trial, the court would be fully justified in ordering the mask removed so that he might be identified by the witness," citing *Warlick v. White*, 76 N.C. 175.

In the light of these principles it is noted that in the instant case the witness for the State had testified as to a small scar near defendant's left eye, a small mole on his left ear, and gold on his front teeth. It was as to these that the juror inquired. True, under the circumstances here revealed, the trial judge might have denied the inquiry but, defendant having readily and fully consented for the jury to examine his person in the respects indicated, this Court holds that prejudicial error is not made to appear. The exception taken would seem to have been taken as an afterthought.

It is noted, however, that while the defendant was convicted only of a misdemeanor, the sentence imposed by the court is in the State's

Prison. This is not sanctioned by law. See Constitution of North Carolina, Art. XI, Section 3, G.S. 148-28, and *S. v. Cagle,* 241 N.C. 134, 84 S.E. 2d 649.

Hence the case is remanded for proper sentence.

Error and remanded.