STATE OF NORTH CAROLINA v. GENE WAYNE GARRETT
AND
STATE OF NORTH CAROLINA v. CHARLES LEONARD BRANK
No. 6926SC316

(Filed 23 July 1969)

1. Criminal Law § 98—    conduct of trial — witness taken into custody
The fact that the trial court ordered a State's witness to be taken into custody and charged with perjury does not constitute an expression of opinion to the prejudice of defendants in violation of G.S. 1-180 when the trial court's action took place out of the presence of the jury.

2. Criminal Law § 130—    mistrial — juror reading newspaper headline
Defendants were not entitled to a mistrial on the ground that a newspaper article published on the second day of the trial contained an improper and prejudicial statement by the assistant solicitor, where trial

court's findings were to the effect that only one of the jurors had seen the article, that he had merely glanced at the headline, and that his verdict would in no way be affected by what he read.

**3. Criminal Law § 97—   recall of witness — arrest for perjury**

Trial court did not abuse its discretion in allowing the State to recall its witness to give further testimony after the witness had been arrested on a bench warrant charging him with perjury, even though witness' testimony was more favorable to the State on recall than when he had initially testified.

**4. Robbery § 4—   armed robbery — nonsuit**

Evidence of defendants' guilt of armed robbery was sufficient to withstand motions for nonsuit.

**5. Criminal Law § 113—   instructions — recapitulation of the evidence**

Recapitulation of all the evidence is not demanded, and the requirements of the statute in this respect are met by presentation of the principal features of the evidence relied on respectively by the prosecution and defense.

**6. Criminal Law § 113—   instructions — compliance with G.S. 1-180**

Where the charge fully instructs the jury on all substantive features of the case, defines and applies the law thereto, and states the contentions of the parties, it complies with G.S. 1-180, and a party desiring further elaboration on a particular point, or of his contentions, or a charge on a subordinate feature of the case, must aptly tender request for special instructions.

**7. Criminal Law § 113—   instructions — recapitulation of testimony**

Trial court did not err in restricting its recapitulation of the evidence offered by a State's witness to the testimony given by the witness on the second day of the trial after the witness had been arrested and charged with perjury for testimony given on the first day.

APPEAL by defendants from *Thornburg, S.J.,* at the 3 February 1969 Schedule "D" Criminal Session of MECKLENBURG Superior Court.

By three indictments proper in form, defendants were jointly charged with (1) armed robbery of William McMillan, (2) armed robbery of A. C. Warren, and (3) armed robbery of James Lewis. The indictments alleged that the offenses occurred on 24 July 1968 and that the value of the property taken from McMillan was $1675, from Warren $225, and from Lewis $285. There were additional indictments against the defendants but they were dismissed for lack of evidence. The cases were tried together and the jury found both defendants guilty in all three cases. From judgments imposing prison sentence of not less than 25 years nor more than 30 years on each defendant, they appealed.

*Attorney General Robert Morgan and Staff Attorney Sidney S. Eagles, Jr., for the State.*

*James H. Morton for defendant appellant Garrett and Arthur Goodman, Jr., for defendant appellant Brank.*

BRITT, J.

**[1]**   The first assignment of error brought forward and discussed in defendants' brief relates to an order by the trial judge, entered on the first day of the trial, that a State's witness, Jimmy Rogers, be taken into custody and a bench warrant issued charging him with perjury. Defendants contend that the action of the judge constituted an opinion by the judge that the witness was guilty of perjury, to the prejudice of defendants in violation of G.S. 1-180.

The record reveals that after the witness Rogers had testified and left the witness stand the following occurred:

> "COURT:   Mr. Liles, may I see your file? Sheriff, take the Jury to the Jury Room. Members of the Jury, if you will step out for a few minutes, please, we will send for you a little later. Sheriff, after you take the Jury to the Jury Room, come back to the Courtroom.
>
>   JURY RETURNED TO JURY ROOM.
>
> COURT:   Sheriff, take this witness into custody and I want a bench warrant issued against this witness for signature this afternoon for perjury.
>
> JURY RETURNED TO COURTROOM."

In support of their contention, defendants cite *State v. Barnes,* 4 N.C. App. 446, 167 S.E. 2d 76, where, after discussing several Supreme Court decisions on the question, Parker, J., on behalf of this Court, said:

> "These cases establish that if a witness is taken into custody during the course of the trial under such circumstances as to lead the jury to the conclusion that the judge was of the opinion that the witness was guilty of perjury, such action constitutes prejudicial error as being an expression of opinion by the court as to the credibility of the witness."

Although we adhere to and reaffirm the quoted statement, we are unable to perceive how the circumstances in the instant case led "the jury to the conclusion that the judge was of the opinion that the witness was guilty of perjury" when the only action taken by the judge in the presence of the jury was to ask the assistant so-

licitor for his file, all other action being in the absence of the jury. The assignment of error is overruled.

**[2]** Defendants next assign as error the failure of the trial judge to grant their motions for a mistrial based on a newspaper article published during the trial containing "an improper and prejudicial statement by the Attorney for the State."

Trial of this case began on Monday, 10 February 1969, and lasted two or three days. On the morning of Tuesday, 11 February 1969, the Charlotte Observer contained an article, not on the front page, entitled "Witness Held As Poker-Theft Trial Kicks Off." The fourth paragraph of the article quoted Assistant Solicitor Liles as saying that Rogers' testimony Monday was "substantially different" from an unsigned statement Rogers gave to investigating police.

The record indicates that before the court recessed for the day on Monday, 10 February 1969, the trial judge instructed the jurors, among other things, not to read any newspaper during the course of the trial. On Tuesday when defense counsel, in the absence of the jury, moved for a mistrial based on the newspaper article, the trial judge then recalled the jury and inquired if any juror had read any article or portion of an article appearing in the Charlotte Observer pertaining to the case being tried. One juror stated that he "just looked at the headline of the article and passed it over." The judge then questioned the juror as to whether, after he looked at the headline, he formed or expressed any opinion about the case. The juror stated that he had not. The judge then asked the juror if reading the headline would in any way affect his "ultimately reaching a verdict in the case based solely' on the evidence as it came from the witness stand and the arguments and contentions of counsel and the instructions given you by the court." The juror replied that "[i]t would not affect me in any way." No other juror indicated that he had seen the headline or article. In the absence of the jury, the judge then made appropriate findings and concluded that the juror was not prejudiced by reading the headline, that the remaining jurors had not read any portion of the article, and that the jury panel as constituted was competent to proceed with the trial of the case.

There was no showing that any juror read the statement attributed to the assistant solicitor, hence there was no showing of prejudice as to it. The record fully supports the findings and conclusions of the trial judge that the jury was competent to proceed with the trial, and the assignment of error relating thereto is without merit and is overruled.

**[3]** In their third assignment of error, defendants contend that the court erred in allowing the State to recall its witness, Jimmy Rogers, to testify further in the case after said witness had been arrested on a bench warrant issued by the court charging him with perjury. The transcript of testimony discloses that when Rogers first testified he provided some evidence that was helpful to the State but was evasive about the date on which he, Marlowe DeYoung and David Roland saw the defendants at a night spot near Greenville, South Carolina, and followed them to Charlotte. The witness was also evasive as to when he last saw the defendants after they arrived in Charlotte. When he was recalled as a witness for the State, Rogers definitely established the night of 23 July 1968 and early morning of 24 July 1968 as the dates that he had talked with defendants in or near Greenville, S. C., and followed them to Charlotte. He also testified when recalled that defendants and the witness stopped at a service station on the edge of Charlotte and defendants asked for and received directions to the Charlotte Moose Lodge; that he, Rogers, and his group followed defendants to the parking lot at the Moose Lodge and that Rogers then became scared, left Charlotte and went back to Greenville; that defendant Brank stated that he and Garrett might rob the Moose Lodge.

Conceding that Rogers' testimony was more favorable to the State when he was recalled as a witness than when he initially testified, we do not think the judge committed error in permitting him to be recalled. In *State v. Noblett,* 47 N.C. 418, cited in the attorney general's brief, we find the following: "So in *State v. Weaver,* 35 N.C., 491, it was stated that whether a witness who has once been examined shall be re-examined is a question of discretion with the presiding judge, and that from his decision no appeal would lie to this Court." We hold that permitting the witness to be recalled in the instant case was within the discretion of the trial judge and no abuse of that discretion has been shown. The assignment of error is overruled.

**[4]** Defendants assign as error the failure of the court to grant their motions for nonsuit. When considered in the light most favorable to the State, the evidence showed: Defendants lived in or near Greenville, South Carolina. Around eleven or twelve on the night of 23 July 1968, they were seen together at the Oasis, a night spot near Greenville, S. C. At the suggestion of defendant Brank, defendants left Greenville on I-85 to go to Charlotte to play poker. Jimmy Rogers, Marlowe DeYoung and David Roland, acquaintances of defendants and with whom they had talked at the Oasis, followed de-

fendants to Charlotte in another car. Defendants and the others stopped at a service station near the edge of Charlotte and asked for and obtained directions to the Moose Lodge on East Eighth Street in Charlotte. Proceeding to the Moose Lodge parking lot, defendants were followed by Rogers, DeYoung and Roland. At the parking lot, Brank stated that they might rob the Moose Lodge and tried to get Rogers to go in. Rogers got scared and he, DeYoung and Roland left and returned to their homes. William McMillan was the assistant manager of the Moose Lodge and was on duty at the time, it then being 2:30 a.m. or later. A. C. Warren and several others were at the Moose Lodge playing poker. Defendants gained entrance to the Moose Lodge and appeared in the doorway of the card room with each of them carrying a shotgun. With his gun pointed at them, Garrett ordered all of the card players to place their hands on the table and then ordered them to stand up and remove their pants. Brank collected the pants and placed them in pillow cases or laundry bags. James Lewis came to the lodge while defendants were there and with the use of their shotguns defendants robbed him of his billfold containing approximately $270. At Garrett's order, McMillan surrendered the money in the lodge cash register, approximately $40, and also gave defendants $770 of his own money. After staying in the lodge about fifteen minutes and relieving all persons there of their money and pants, defendants departed, carrying money, pants, etc., with them. McMillan and Lewis positively identified Garrett as one of the two men who perpetrated the robbery with the use of a shotgun, and Warren identified Brank as the other one. We hold that the evidence was sufficient to survive the motions for nonsuit, and the assignment of error relating thereto is overruled.

[5-7] In their final assignment of error, defendants contend that the court erred in restricting its recapitulation of the evidence offered by the witness Rogers to the testimony given by him on the second day of the trial after the witness had been arrested and charged with perjury for testimony previously given. We have carefully reviewed the judge's charge and hold that it was free from prejudicial error. It is well established in this jurisdiction that recapitulation of all the evidence is not demanded, and the requirements of the statute in this respect are met by presentation of the principal features of the evidence relied on respectively by the prosecution and defense. *State v. Thompson*, 257 N.C. 452, 126 S.E. 2d 58. Where the charge fully instructs the jury on all substantive features of the case, defines and applies the law thereto, and states the contention of the parties, it complies with G.S. 1-180, and a party desiring further elaboration on a particular point, or of his contentions, or a charge

on a subordinate feature of the case, must aptly tender request for special instructions. *State v. Guffey*, 265 N.C. 331, 144 S.E. 2d 14. Neither of defendants requested additional or special instructions in this case. The assignment of error is overruled.

The defendants received a fair trial, free from prejudicial error, and the sentences imposed were within statutory limits.

No error.

Mallard, C.J., and Parker, J., concur.