STATE OF NORTH CAROLINA v. CLARENCE DAVID McNEIL

No. 7910SC968

(Filed 3 June 1980)

1. **Criminal Law § 111.1– court's instructions to prospective jurors – no improper reference to indictments**

     The trial judge did not improperly refer to the bills of indictment re-

State v. McNeil

turned against defendant while informing prospective jurors about the case where the judge summarized the indictments and explained to the jury the circumstances under which defendant was being tried. G.S. 15A-1213.

2. **Criminal Law § 111.1– reading indictment during jury charge – no error**

The prohibition against reading the pleadings to the jury is inapplicable to the judge's jury charge, and defendant therefore could not complain of the judge's reading of the indictments returned against him during the charge to the jury.

3. **Constitutional Law § 28; Criminal Law § 66.12– defendant compelled to exhibit self to jury – no denial of due process**

Defendant was not denied due process of law when he was compelled to exhibit himself to the jury for the purpose of allowing a police officer to identify certain physical characteristics on defendant's person, since such procedure did not offend the "sense of justice" implicit in the due process clause of the Fourteenth Amendment of the U.S. Constitution and Article I, § 19 of the N.C. Constitution, but such procedure was simply a logical extension of the rule that witnesses may testify as to a defendant's physical condition or as to identifying marks on his body.

4. **Narcotics § 3.1– "unusual" amount of traffic around defendant's house – evidence properly admitted**

In a prosecution of defendant for possession with intent to sell and sale of a controlled substance, the trial court did not err in allowing testimony as to whether an "unusual" amount of traffic had been observed around defendant's home during the two months immediately preceding the allegedly illegal transaction, since the court did not abuse its discretion in allowing the leading question which drew the response complained of, and since the testimony objected to did not constitute the expression of an improper opinion.

5. **Narcotics § 4.5– possession and sale of controlled substance – no instruction on unlawfulness – burden of proof not shifted to defendant**

There was no merit to defendant's contention that the trial judge erroneously failed to instruct the jury that defendant's alleged possession of a controlled substance with intent to sell and deliver and defendant's alleged sale and delivery of a controlled substance must have been "unlawful" in order to convict him of those offenses, and that such failure created a presumption of unlawfulness from the mere possession or sale and delivery of the controlled substance, thereby shifting the burden of proof to defendant, since G.S. 90-95 makes it unlawful for any person to possess or sell and deliver any controlled substance except in certain circumstances, G.S. 90-113.1(a) placing the burden of proving an exemption or exception on the person claiming its benefit; this statutory scheme does not run afoul of constitutional standards; and the burden of proving that defendant possessed or sold and delivered a controlled substance is not shifted away from the State.

APPEAL by defendant from *Lee, Judge.* Judgment entered 23 May 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 5 March 1980.

Defendant was charged and convicted under G.S. 90-95(a) (1) and G.S. 90-95(a) (3) for the felonious possession with the intent to sell and deliver and the felonious sale and delivery of phenmetrazine (preludin) a Schedule II controlled substance, and was sentenced to a prison term of not less nor more than two years.

At trial, the State presented evidence which tended to prove the following: On 26 January 1979 Raleigh Police Officer James L. Jordan was working as an undercover agent "making buys of drugs, intoxicating liquors and beverages at different locations." Jordan contacted defendant at approximately noon at 924 S. Blount Street in Raleigh, and negotiated the sale of one preludin pill in exchange for an amount of meat worth approximately $38. After the transaction Officer Jordan returned to his office and met a Detective Weathersbee, and the two officers secured the pill in an evidence envelope. The pill was later examined and found to be preludin. At trial, the pill was identified and admitted into evidence.

Defendant was identified by Officer Jordan during the trial as the person from whom he obtained the controlled substance. The identification was based on Jordan's observation of defendant for approximately three to five minutes at a range of one foot in a well-lighted room.

Defendant presented no evidence.

From the judgment entered upon the jury verdict of guilty to the offenses charged, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Archie W. Anders, for the State.*

*Loflin, Loflin, Galloway and Acker, by Thomas F. Loflin, III, and James R. Acker, for defendant appellant.*

MORRIS, Chief Judge.

By his first assignment of error, defendant contends that the trial judge improperly referred to the bills of indictment returned against him while informing prospective jurors about the case, and that the trial judge erred by reading the bills of indictment to the jury during his jury charge.

[1] With respect to the trial judge's opening remarks, defendant complains of the following portion:

> The defendant, Clarence David McNeil, is charged in one bill of indictment with the felony possession with intent to sell and deliver a controlled substance, to wit: Phenmetrazine, which is included in Schedule Two of the North Carolina Controlled Substance Act, and in another bill of indictment he is charged with the sale and delivery of that controlled substance. These offenses are alleged to have occurred on or about the 26th day of January, 1979, in Wake County. To all of the charges contained in those bills of indictment . . . .

Contrary to defendant's assertion, the trial judge's opening remarks did not violate G.S. 15A-1213 and G.S. 15A-1221. G.S. 15A-1221 prescribes the order of proceedings in a criminal jury trial, and provides, in pertinent part: "The judge must inform the prospective jurors of the case in accordance with G.S. 15A-1213." G.S. 15A-1213 provides:

> Prior to selection of jurors, the judge must identify the parties and their counsel and briefly inform the prospective jurors, as to each defendant, of the charge, the date of the alleged offense, the name of any victim alleged in the pleading, the defendant's plea to the charge, and any affirmative defense of which the defendant has given pretrial notice as required by Article 52, Motions Practice. The judge may not read the pleadings to the jury.

We find in the Official Commentary published pursuant to these sections an explanation as to the purpose of the prohibition

against reading criminal pleadings to the jury, "that jurors hearing the stilted language of indictments and other pleadings and witnessing various motions upon arraignment are likely to get a distorted view of the case." Although the trial judge referred to the indictments, he did not read them. Rather, the trial judge summarized those indictments and explained to the jury the circumstances under which defendant was being tried. This procedure is entirely appropriate and certainly complies with the spirit of G.S. 15A-1213.

[2] With respect to the trial judge's reading the indictments returned against defendant during the charge to the jury, we find that this prohibition against reading the pleadings to the jury is inapplicable to the judge's jury charge. At that phase of the trial, "to infer that they [the jury] would be given a distorted view of the case by a mere reiteration of the charge couched in the words of the indictment would be illogical." *State v. Laughinghouse,* 39 N.C. App. 655, 658, 251 S.E. 2d 667, 669, *cert. denied and appeal dismissed,* 297 N.C. 615, 257 S.E. 2d 438 (1979). Defendant's first assignment of error is, therefore, overruled.

[3] Defendant next argues that his right to due process of law was denied him when he was compelled to exhibit himself to the jury for the purpose of allowing Officer Jordan to identify certain physical characteristics on defendant's person. Defendant argues that the State should have used some alternative means with which to display defendant's physical characteristics. Defendant argues further than even in those situations where exhibition of a defendant's person was held proper, some exigency justified such display. *State v. Cook,* 280 N.C. 642, 187 S.E. 2d 104 (1972); *State v. Sanders,* 280 N.C. 67, 185 S.E. 2d 137 (1971); *State v. Thomas,* 20 N.C. App. 255, 201 S.E. 2d 201 (1973), *cert. denied,* 284 N.C. 622, 202 S.E. 2d 277 (1974). We disagree.

Although defendant's assignment of error is based on due process considerations and not on defendant's Fifth Amendment right to be free from self-incrimination, we note that application of the position of the Court in cases decided under the Fifth Amendment would require the conclusion that requiring defendant to stand before the jury did not violate his constitutional protection against self-incrimination. The privilege

against self-incrimination protects an accused only from being compelled to testify against himself or provide the State with evidence which is testimonial or communicative in nature. *Schmerber v. California,* 384 U.S. 757, 16 L.Ed. 2d 908, 86 S.Ct. 1826 (1966); *Holt v. United States,* 218 U.S. 245, 54 L.Ed. 1021, 31 S.Ct. 2 (1910); *State v. Perry,* 291 N.C. 284, 230 S.E. 2d 141 (1976). It is, therefore, proper for the State to require a defendant to stand or otherwise exhibit himself before the jury where such an act is not of a testimonial or communicative nature. *See State v. Perry, supra,* and cases there cited.

With respect to defendant's claim that he was deprived of his liberty without due process of law, defendant contends that the totality of the circumstances prevalent at trial made this identification procedure improperly suggestive and prejudicial. The identification of defendant by Officer Jordan, however, had occurred prior to defendant's having to stand before the jury. The record indicates that when asked if he could identify defendant, the witness requested and was allowed to leave the witness stand, walk over to the defense table, and observe defendant. Upon returning to the witness stand, Officer Jordan stated: "When I looked at the defendant sitting at the table I looked at the dent [scar] over his left eye. That tells me that this is the defendant that I bought from on the 26th." It was only after this identification that Officer Jordan was permitted to illustrate his testimony by pointing out the scar over defendant's left eye.

In *State v. Perry, supra,* defendant was required to stand before the jury and place a stocking mask over his head and face in the way a State's witness had testified it was worn by the man who robbed and assaulted her. The Court cited *Schmerber v. California* in holding that such a procedure did not offend the "sense of justice" implicit in the due process clause of the Fourteenth Amendment to the Constitution of the United States and Article 1, § 19 of the Constitution of North Carolina. *See also Rochin v. California,* 342 U.S. 165, 96 L.Ed. 183, 72 S.Ct. 205 (1952). In the present case, we do not believe the exhibition of certain characteristics of one's person offends the "sense of justice" so as to warrant defendant a new trial. We believe that such a procedure is a logical extension of the rule that witness-

es may testify as to a defendant's physical condition or as to identifying marks on his body. *See State v. Floyd*, 246 N.C. 434, 98 S.E. 2d 478 (1957). This assignment of error is overruled.

[4] By his fourth assignment of error defendant contends that the trial court erred in allowing testimony as to whether an "unusual" amount of traffic had been observed around defendant's home during the two months immediately preceding the alleged illegal transaction. Defendant contends that the question asked by the prosecutor was leading, that it elicited a conclusory opinion from the witness, and that the admission of such testimony was prejudicial to him.

Although the question was leading in nature, the control of examination of witnesses is a matter of discretion vested in the trial court, reviewable only for an abuse of discretion. *State v. Painter*, 265 N.C. 277, 144 S.E. 2d 6 (1965). We find no abuse of discretion here.

Nor did the testimony concerning the amount of traffic around defendant's house constitute the expression of an improper opinion. An opinion can be best explained as "any narrative statement by a witness which does not describe facts directly perceived by the senses in the fullest detail that could reasonably be expected of an average witness and reasonably be understood by an average juror." 1 Stansbury's N.C. Evidence § 122 (Brandis rev. 1973). An opinion is inadmissible whenever the witness can relate facts so that the trier of fact will have an understanding of them and the jury is as well qualified as the witness to draw inferences and conclusions from those facts. *State v. Patterson*, 288 N.C. 553, 220 S.E. 2d 600 (1975), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1211, 96 S.Ct. 3211 (1976). The response by the witness was as follows:

> Yes, sir. We had seen cars come and go, and they would come and go in just for a short while and leave.

Such a response is properly admissible as evidence of an observer testifying to the results of his observation. *See State v. Sasser*, 21 N.C. App. 618, 205 S.E. 2d 565, *cert. denied*, 285 N.C.

667, 207 S.E. 2d 764 (1974). In any event, even if the admission of this evidence were error, we find no prejudice which would justify awarding defendant a new trial. This assignment of error is overruled.

[5] By his fifth assignment of error, defendant contends that the trial judge erroneously failed to instruct the jury that defendant's alleged possession of a controlled substance with intent to sell and deliver, and defendant's alleged sale and delivery of a controlled substance must have been "unlawful" in order to convict him of those offenses. The validity of the court's instruction depends on an analysis of certain provisions of the North Carolina Controlled Substances Act, Article 5, Chapter 90 of the North Carolina General Statutes.

The portion of the trial judge's charge to the jury to which defendant excepts is as follows:

> I charge that for you to find the defendant guilty of selling or delivering Phenmetrazine, Preludin, a controlled substance, the State must prove beyond a reasonable doubt that on the date in question, that is, January the 26th, 1979, that this defendant, Clarence David McNeil, knowingly sold or delivered one tablet of Phenmetrazine to Officer J.L. Jordan.

> .  .  .

> I charge that for you to find the defendant guilty of possessing Phenmetrazine or Preludin, a controlled substance, with the intent to sell or deliver it, the State must prove two things beyond a reasonable doubt. First, that on January the 26th, 1979, that this defendant, Clarence David McNeil, knowingly possessed Phenmetrazine, a controlled substance. The Court instructs you that Phenmetrazine is a controlled substance. ... A person possesses a substance when he has, either by himself or together with others, both the power and intent to control the disposition or use of that substance. And, second, the State must prove beyond a reasonable doubt that at the time defendant pos-

sessed that tablet that he intended to sell or deliver that tablet.

The challenged instructions closely parallel North Carolina Pattern Instructions Nos. 260.21 and 260.15. Nowhere in the charge does the term "unlawfully" appear. Defendant insists that such an omission creates a presumption of unlawfulness from the mere possession or sale and delivery of the controlled substance, thereby shifting the burden of proof to defendant.

G.S. 90-95, upon which defendant's conviction is based, provides, in pertinent part, as follows:

(a) Except as authorized by this Article, it is unlawful for any person:

(1) To manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance;

(3) To possess a controlled substance.

It is clear that one may be exempt from State prosecution for the possession or the sale or delivery of controlled substances if that person is authorized by the North Carolina Controlled Substances Act to so possess or sell or deliver such substances. *See, e.g.,* G.S. 90-95(a); G.S. 90-113.3(f); *State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481 (1973). However, the legislative scheme implicit in the North Carolina Controlled Substances Act provides that, in a prosecution under G.S. 90-95, proof of such exemption through authorization must be provided by the defendant. G.S. 90-113.1(a) provides:

It shall not be necessary for the State to negate any exemption or exception set forth in this Article in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this Article, and the burden of proof of any such exemption or exception shall be upon the person claiming its benefit.

It is defendant's position that this section is unconstitutional in that it creates a mandatory presumption of criminality and

shifts the burden of proof to defendant to prove lawfulness in order to be acquitted of the crimes charged under G.S. 90-95.

We do not believe this statutory scheme runs afoul of constitutional standards. G.S. 90-95 makes criminal the manufacture, possession, sale or delivery of a controlled substance. Phenmetrazine is listed as a Schedule II controlled substance. G.S. 90-90 (c) (2). The manufacture, possession, sale or delivery of phenmetrazine is unlawful unless and until it is authorized under an appropriate section of the Act. G.S. 90-95. It is only under those circumstances that one may avoid prosecution if he otherwise falls under the provisions of the Act.

In two recent decisions, this Court dealt with the exemption provisions of G.S. 90-113.1 *State v. Best,* 31 N.C. App. 250, 229 S.E. 2d 581 (1976), *reversed on other grounds,* 292 N.C. 294, 233 S.E. 2d 544 (1977); *State v. Richardson,* 23 N.C. App. 33, 208 S.E. 2d 274, *cert. denied and appeal dismissed,* 286 N.C. 213, 209 S.E. 2d 317 (1974). In *State v. Best, supra,* this Court dealt with the matter of exemption for physicians in writing prescriptions for controlled substances during the course of their professional practice. In that case we observed that it was the duty of the defendant to "bring himself within an exception to the foregoing prohibition. G.S. 90-113.1." 31 N.C. App. at 264, 229 S.E. 2d at 589. Similarly, in *State v. Richardson, supra,* defendant appealed from a judgment denying him remission of an automobile confiscated by court order pursuant to G.S. 90-112 (f), which provides for the forfeiture of all conveyances used to transport controlled substances. The Court explained the statutory scheme dealing with forfeitures under Chapter 90 by applying G.S. 90-113.1 (a):

> North Carolina law subjects a vehicle which is found to have been used in the illegal transportation of narcotic drugs to immediate forfeiture. Forfeiture may be defeated if the claimant can show the illegal use occurred without his knowledge or consent, with the claimant having the right to have a jury pass upon his claim ... The burden is statutorily placed upon the claimant to show the absence of consent or knowledge. G.S. 18A-21 (b); G.S. 90-113.1 (a).

23 N.C. App. at 36, 208 S.E. 2d at 276. Although the precise question of this appeal was not before the Court in *Best* and *Richardson,* we agreed with these decisions insofar as they approve of the procedure adopted by G.S. 90-113.1 to establish an exemption status in prosecutions under Chapter 90. Contrary to defendant's contentions, this section does not shift the burden of proof away from the State. G.S. 90-95 makes clear the requirements for finding defendant guilty of the manufacture, possession, sale or delivery of a controlled substance. That burden remains with the State.

Since the statutory scheme implicit in the Controlled Substances Act establishes criminal liability once defendant commits the acts set forth in G.S. 90-95, it is apparent that the trial judge properly instructed the jury as to what it must find in order to find defendant guilty. Where the judge's charge fully instructs the jury on all the substantive areas of the case, and defines and applies the law thereto, it is sufficient. G.S. 15A-1231, -1232; *State v. Garrett,* 5 N.C. App. 367, 168 S.E. 2d 479 (1969).

We find that defendant received a fair trial free from prejudicial error.

No error.

Judges VAUGHN and ARNOLD concur.