IN THE SUPREME COURT OF NORTH CAROLINA

No. 262PA24

Filed 20 March 2026

STATE OF NORTH CAROLINA

v.

QUANTEZ LASHAY THOMAS

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 295 N.C. App. 269, 905 S.E.2d 106 (2024), affirming judgments entered on 19 August 2022 by Judge R. Stuart Albright in Superior Court, Guilford County. Heard in the Supreme Court on 17 September 2025.

*Jeff Jackson, Attorney General, by Benjamin T. Spangler, Assistant Attorney General, for the State-appellee.*

*Gilda C. Rodriguez for defendant-appellant.*

NEWBY, Chief Justice.

Today we consider whether a criminal defendant who successfully appeals his original sentence may receive a harsher punishment on remand. In rare instances, the answer is yes. This case—in which the trial court erroneously undercalculated defendant's minimum sentence after his first trial, then rectified its mistake by imposing the proper, lawful punishment after his second trial—presents one such scenario. Because courts may not impose illegal sentences, the trial court was required to modify defendant's sentence to comply with our legislature's mandatory felony sentencing framework. We therefore affirm the decision of the Court of Appeals

upholding defendant's corrected sentence.

In 2019, a Guilford County grand jury indicted defendant on charges related to a string of motor vehicle and credit card thefts. *See generally State v. Thomas* (*Thomas II*), 295 N.C. App. 269, 270–73, 905 S.E.2d 106, 108–10 (2024) (describing the underlying facts in greater detail). At trial, defendant opted to waive his right to counsel and proceeded *pro se*. The jury convicted him of thirteen offenses,[1] which the trial court consolidated into two judgments for sentencing purposes. The trial court had discretion as to which offenses it consolidated for sentencing. N.C.G.S. § 15A-1340.22(b) (2025). Once the offenses had been consolidated, however, the trial court was required to apply a punishment authorized by the North Carolina Structured Sentencing Act, also known as the structured sentencing framework. *See generally id.* §§ 15A-1340.10–1340.23.

Under the structured sentencing framework, the sentence imposed in a consolidated judgment "shall be consistent with" the punishment appropriate "for the most serious offense" in the group. *Id.* § 15A-1340.22(b). Accordingly, for the first judgment—structured around defendant's felony larceny conviction, the most serious offense in the first group—the trial court assigned defendant nine prior record level points, classified him as a prior record level III offender, and sentenced him to

---

[1] The trial court erroneously sentenced defendant on fourteen counts rather than thirteen. *See State v. Thomas* (*Thomas I*), No. COA20-814, slip op. at 7 n.1 (N.C. Ct. App. Feb. 15, 2022) (unpublished) ("Defendant also contends the trial court erred by sentencing [d]efendant for an offense for which he had not been convicted. . . . Because of our disposition here, we do not reach this issue.").

sixty-seven to ninety-three months in prison.

In the second judgment, the one at issue here, the trial court again structured the sentence around the judgment's most serious offense: one of defendant's convictions for breaking or entering a motor vehicle. *See id.* As with the first judgment, the trial court assigned defendant nine prior record points, classified him as a prior record level III offender, and sentenced him to twenty-six to forty-four months in prison. As we explain below, this calculation was error.

Defendant appealed to the Court of Appeals. *See Thomas I*, slip op. at 1–2. The Court of Appeals held that the trial court had erred by accepting defendant's waiver of counsel and that this error had prejudiced defendant at trial. *Id.* at 9–14. Therefore, the court remanded for a new trial. *Id.* at 14. Although not pertinent to the waiver issue, the Court of Appeals also noted a few mistakes in the consolidated judgments:

> The written judgment included an order for [d]efendant to serve an active sentence for three convictions of felonious breaking [or] entering a motor vehicle, when [d]efendant was only convicted of two such charges. In addition, [d]efendant was convicted of three counts of misdemeanor larceny, but the trial court only sentenced him on two counts.

*Id.* at 7; *see also Thomas II*, 295 N.C. App. at 272 n.2, 905 S.E.2d at 109 n.2 ("The trial court made a clerical error in its judgments after the first trial, but in light of our disposition, we did not reach that issue in *Thomas I*.").

At defendant's second trial, the jury found him guilty of eight charges. The trial court again consolidated the verdicts into two judgments. It structured the first

-3-

judgment around defendant's charge for possession of a stolen motor vehicle, an offense that carried a punishment identical to felony larceny. *See* N.C.G.S. §§ 14-71.2, 14-72, 15A-1340.17(c) (2025). For this judgment, the trial court assigned defendant nine prior record points, classified him as a prior record level III offender, and sentenced him to sixty-seven to ninety-three months in prison, exactly as it had done after defendant's first trial. Defendant does not contest the propriety of this sentence.

In the second judgment, the one that defendant challenges at this Court, the trial court again structured the consolidated sentence around defendant's conviction for breaking or entering a motor vehicle. But the trial court corrected its earlier error by assigning defendant *ten* prior record points instead of nine, apparently recognizing that because defendant had been convicted of a prior offense with "all the elements of the present offense"—that is, breaking or entering a motor vehicle—it was required by law to impose an additional point. *Id.* § 15A-1340.14(b)(6). The extra point should have applied at defendant's first sentencing as well, since at both sentencings the trial court consolidated the judgment at issue around the same crime, breaking or entering a motor vehicle.

The additional point raised defendant's prior record level from III to IV. *See id.* § 15A-1340.14(c)(3)–(4) (defining level III as "[a]t least [six], but not more than [nine] points," and level IV as "[a]t least [ten], but not more than [thirteen] points"). In accordance with this classification, the trial court imposed a correctly

calculated sentence at the bottom of the level IV sentencing range: thirty to forty-eight months.[2]

Defendant appealed to the Court of Appeals for a second time. He argued there, *inter alia*, that the trial court had violated section 15A-1335 of the General Statutes when it resentenced him to a longer prison term. This statute, which applies on remand following a criminal defendant's successful appeal for a new trial, "prophylactically" shields the defendant from "judicial vindictiveness" during resentencing. *State v. Schalow*, 379 N.C. 639, 647, 866 S.E.2d 417, 422 (2021) (emphasis omitted). Section 15A-1335 provides that if the new trial results in a conviction "for the same offense, or for a different offense based on the same conduct," the trial court "may not impose a new sentence . . . more severe than the prior sentence." N.C.G.S. § 15A-1335 (2025).

The Court of Appeals rejected defendant's argument that the trial court had violated section 15A-1335 here. *Thomas II*, 295 N.C. App. at 280, 905 S.E.2d at 114. The Court of Appeals noted that "defendant did not challenge the merits of" the tenth point, but simply contested "whether the point was statutorily required." *Id.* (citation modified). Citing its own precedent, the court explained that "where the trial court is required by statute to impose a particular sentence, section 15A-1335 does not apply

---

[2] Defendant was convicted of fewer offenses at his second trial than at his first trial. Nonetheless, the trial court used the same consolidation of offenses as it had used at his first trial.

to prevent the imposition of a more severe sentence." *Id.* (citation modified). Defendant filed a petition for discretionary review on this question, which this Court allowed.

The issue presented is whether section 15A-1335 prohibited the trial court in this case from resentencing defendant to a harsher prison term. Put differently, when the respective requirements of section 15A-1335 and structured sentencing conflict with one another, how must the trial court resolve the discrepancy? Questions of statutory interpretation receive de novo review. *Morris v. Rodeberg*, 385 N.C. 405, 409, 895 S.E.2d 328, 331 (2023).

We begin with a brief outline of felony sentencing in North Carolina. Most felony offenders are sentenced under the structured sentencing framework. *See* N.C.G.S. § 15A-1340.10 (2025) (listing the exceptions). By enacting these comprehensive and detailed requirements, the General Assembly "intended to produce consistency in criminal sentencing" and "ensure punishment is commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability." *State v. Norris*, 360 N.C. 507, 511, 630 S.E.2d 915, 917 (2006) (citation modified). Structured sentencing accomplishes this task

> by requiring that trial courts specify minimum and maximum terms of imprisonment for felony convictions. A sentencing chart makes the potential minimum sentences available in a given case contingent on the offense class of the felony (A–I) and the defendant's prior record level (I–VI). For each combination of offense class and prior

> record level, the chart sets forth potential minimum sentences in aggravated, presumptive, and mitigated ranges.

*Id.* at 511–12, 630 S.E.2d at 917–18 (internal citations and quotation marks omitted). Importantly, after the trial court calculates the offense class and prior record level, it "*must* select a minimum sentence from the presumptive range unless it determines aggravating factors justify a more severe sentence or mitigating factors warrant a less severe sentence." *Id.* at 512, 630 S.E.2d at 918 (emphasis added) (citing N.C.G.S. § 15A-1340.16(b) (2005)).

The rigidity of the structured sentencing calculus is deliberate. *See id.* at 511, 630 S.E.2d at 917 ("North Carolina's move away from indeterminate sentencing resulted from 'a perceived evil of disparate sentencing, and . . . a perceived problem in affording trial judges and parole authorities unbridled discretion in imposing sentences.'" (alteration in original) (quoting *State v. Allen*, 359 N.C. 425, 430, 615 S.E.2d 256, 260 (2005), *withdrawn on other grounds*, 360 N.C. 569, 635 S.E.2d 899 (2006) (order)). Still, "trial courts retain considerable discretion during sentencing" as long as they comply with the statutory framework. *Id.* Thus, any deviation from the structured sentencing framework must be authorized by the framework itself.

That brings us to defendant's case and his challenge to the second consolidated judgment entered at his second sentencing. At defendant's first sentencing, the trial court determined that defendant's conviction for breaking or entering a motor vehicle must be raised to Class E because of defendant's habitual felon status. *See* N.C.G.S.

§ 14-56(a1) (2019) (categorizing the offense as Class I);[3] N.C.G.S. § 14-7.6 (2025) (providing that habitual felons "must . . . be sentenced at a felony class level that is four classes higher than the principal felony," up to Class C). The trial court then erroneously determined that defendant had nine prior record points, making him a prior record level III offender. *See* N.C.G.S. § 15A-1340.14(c) (2025) (defining level III as "[a]t least [six], but not more than [nine] points"). In the absence of aggravating or mitigating factors, a prior record level III offender who commits a Class E felony must be sentenced to a minimum of twenty-six to thirty-three months. *Id.* § 15A-1340.17(c). Accordingly, the trial court sentenced defendant to a minimum of twenty-six months for this offense.

Following defendant's second trial, the trial court determined again that defendant's habitual felon status raised his breaking or entering a motor vehicle charge to a Class E offense. But the trial court then correctly calculated that defendant had *ten* prior record points, not nine, because all the elements of breaking or entering a motor vehicle had been present in a prior offense. *See id.* § 15A-1340.14(b)(6). Because of the extra point, the trial court concluded that defendant was a prior record level IV offender. *See id.* § 15A-1340.14(c)(4) (defining level IV as "[a]t least [ten], but not more than [thirteen] points"). Therefore, the trial

---

[3] Defendant committed this offense in 2019. Therefore, the General Assembly's subsequent repeal of subsection 14-56(a1) does not affect his case. *See* N.C.G.S. § 14-56(a1) (2025) ("Repealed by S.L. 2023-151, § 1(a), effective 1 December 2023, and applicable to offenses committed on or after that date." (citation modified)).

court sentenced defendant to a minimum term of thirty months—the lowest possible punishment for a Class E felony committed by a prior record level IV offender. *See id.* § 15A-1340.17(c).

The trial court did not have discretion to omit the extra point, even though the point's addition shifted defendant to level IV and increased his minimum prison term. *See id.* § 15A-1340.13(c) ("The judgment of the court shall contain a minimum term of imprisonment that is consistent with the class of offense for which the sentence is being imposed and with the prior record level for the offender."). The trial court's failure to include the tenth point during defendant's first sentencing was error that resulted in the imposition of an illegal sentence.

We turn now to defendant's argument that section 15A-1335 barred the trial court from sentencing him more severely on remand. In pertinent part, this statute reads:

> When a conviction or sentence imposed in superior court has been set aside on direct review or collateral attack, the court may not impose a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence less the portion of the prior sentence previously served.

*Id.* § 15A-1335.

Defendant submits that the trial court could not have imposed a harsher sentence after his second trial without violating the plain text of section 15A-1335. To support this assertion, he notes that the structured sentencing framework is not absolute: "The . . . minimum term of imprisonment shall be within the range specified

for the class of offense and prior record level, *unless applicable statutes require or authorize another minimum sentence of imprisonment.*" *Id.* § 15A-1340.13(b) (emphasis added). Therefore, defendant suggests that a conflict between structured sentencing and section 15A-1335 must be resolved in the latter's favor because it is an "applicable statute[ ]" to which the former yields. *Id.*

We disagree. "This Court adheres to the long-standing principle that when two statutes arguably address the same issue, one in specific terms and the other generally, the specific statute controls." *High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, 366 N.C. 315, 322, 735 S.E.2d 300, 305 (2012); *see also State v. Baldwin*, 205 N.C. 174, 175, 170 S.E. 645, 646 (1933) (applying the same canon in the criminal-law context). In this case, both the structured sentencing framework and section 15A-1335 appear applicable to defendant's resentencing. The former, however, undoubtedly provides more specific criteria than the latter. Indeed, specificity and consistency lie at the heart of structured sentencing. *See Allen*, 359 N.C. at 431, 615 S.E.2d at 260–61 (explaining that "the Structured Sentencing Act repealed . . . and remedied many of the perceived weaknesses of . . . earlier legislation" that had "not controlled the sentence disposition . . . and set only a presumptive prison/jail term" (citation modified)). Because the structured sentencing framework prevails, trial courts must adhere to its requirements.

To be sure, a literal interpretation of section 15A-1335 would prohibit trial courts from *ever* imposing harsher sentences on remand. *See* N.C.G.S. § 15A-1335

STATE V. THOMAS

*Opinion of the Court*

(2025) ("[T]he court may not impose a new sentence . . . more severe than the prior sentence . . . ."). But "[l]iteralism is not proper textual analysis." *Happel v. Guilford Cnty. Bd. of Educ.*, 387 N.C. 186, 206, 913 S.E.2d 174, 191 (2025). Here, among other issues, a literal reading of section 15A-1335 would likely violate the constitutional separation of powers. "Because the legislature has the exclusive authority to prescribe the punishments for crimes, any sentence ordered by the judicial branch and enforced by the executive branch must be within the parameters established by the legislature." *State v. Whitehead*, 365 N.C. 444, 446, 722 S.E.2d 492, 494 (2012); *see also State v. Tirado*, 387 N.C. 104, 120, 911 S.E.2d 51, 64 (2025) (noting the General Assembly's constitutional "prerogative to prescribe criminal punishment").

Both this Court and the Court of Appeals have highlighted the importance of correcting criminal punishments that conflict with the requirements set by our General Assembly.[4] *See, e.g.*, *Whitehead*, 365 N.C. at 446–47, 722 S.E.2d at 494–95 (first citing *State v. Ellis*, 361 N.C. 200, 205–06, 639 S.E.2d 425, 428–29 (2007); and then citing *State v. Roberts*, 351 N.C. 325, 327, 523 S.E.2d 417, 418 (2000)); *State v. Wall*, 348 N.C. 671, 675–76, 502 S.E.2d 585, 588 (1998); *State v. Powell*, 231 N.C. App. 129, 133, 750 S.E.2d 899, 902 (2013); *State v. Cook*, 225 N.C. App. 745, 747–48,

---

[4] As the second dissenting opinion notes, "[t]he Court of Appeals has had even more opportunity" than this Court to consider the application of section 15A-1335. Indeed, for nearly four decades our Court of Appeals has recognized "where the trial court is required by statute to impose a particular sentence on resentencing, section 15A-1335 does not apply to prevent the imposition of a more severe sentence." *State v. Kirkpatrick*, 89 N.C. App. 353, 355, 365 S.E.2d 640, 641 (1988) (citation modified). The rule we adopt today aligns with that longstanding precedent.

738 S.E.2d 773, 775 (2013); *State v. Holt*, 144 N.C. App. 112, 116–17, 547 S.E.2d 148, 152 (2001), *disc. rev. improvidently allowed*, 355 N.C. 347, 560 S.E.2d 793 (2002) (per curiam). For example, in *Roberts* this Court explained that it had been proper for the trial court to amend the defendant's initial, illegal sentence to make it comply with the structured sentencing framework:

> Defendant contends the resentencing by [the trial court] was improper. We disagree. *Trial courts are required to enter criminal judgments consistent with the provisions of the Structured Sentencing Act.* The General Statutes clearly provide that a sentence of unauthorized duration can be modified. . . . The original sentence . . . violated the Structured Sentencing Act. Therefore, the resentencing by [the trial court] was proper in the instant case.

351 N.C. at 327, 523 S.E.2d at 418 (emphasis added) (citations omitted).

Defendant relies primarily on this Court's decision in *State v. Wagner*, 356 N.C. 599, 572 S.E.2d 777 (2002) (per curiam), which he argues "was directly contrary to" the outcome the Court of Appeals reached in his case. In *Wagner*, the trial court classified the defendant as a prior record level VI offender during both his initial and remanded sentencings. *Id.* at 600, 572 S.E.2d at 778. Despite using the same classification at both sentencings, the trial court sentenced the defendant to an additional thirty-four months on remand for the same offense. *Id.*

This Court reversed. *Id.* at 603, 572 S.E.2d at 780. It began by quoting and then paraphrasing section 15A-1335: "Pursuant to this statute a defendant whose sentence has been successfully challenged cannot receive a more severe sentence for the same offense or conduct on remand." *Id.* at 602, 572 S.E.2d at 779. Ultimately,

however, this Court arrived at a fact-specific conclusion: "*In this case* [section] 15A-1335 is an applicable statute requiring 'another minimum sentence of imprisonment.'" *Id.* at 602, 572 S.E.2d at 780 (emphasis added) (quoting N.C.G.S. § 15A-1340.13(b) (2001)). This Court did not interpret section 15A-1335 as an absolute bar on harsher resentencing, as defendant argues.

The constraint on *Wagner*'s holding is crucial because that case involved a pair of sentences that were each *within* the authorized statutory range. The General Assembly contemplated that such decisions would be best left to the sound discretion of the trial court. *See* N.C.G.S. § 15A-1340.17(c)(2) (2025) (permitting the trial court to impose "any minimum sentence" in the presumptive range). The role of section 15A-1335 is to prohibit trial courts from using that discretion vindictively. *See North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S. Ct. 2072, 2080 (1969) ("Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."); *Schalow*, 379 N.C. at 647, 866 S.E.2d at 422 ("Section 15A-1335 was enacted specifically to prevent vindictiveness arising from repeated prosecutions under *Pearce* and its progeny."). Neither discretion nor vindictiveness occurred in the instant case. Rather, the disparity between defendant's sentences resulted from the trial court's correction of an earlier, objective error. Because *Wagner* did not grapple with the application of section 15A-1335 in non-discretionary matters, it does not control the outcome here.

"Section 15A-1335 is mandatory." *Schalow*, 379 N.C. at 647, 866 S.E.2d at 422. We do not suggest otherwise; to the contrary, we emphasize the narrowness of our holding. In the vast majority of new trials that result from successful criminal appeals, section 15A-1335 will prohibit the trial court from imposing a harsher sentence. But our task in this case is not so simple. Instead, we must determine what happens in the rare event section 15A-1335 clashes with the structured sentencing framework, which is a statutory requirement in its own right. *See Norris*, 360 N.C. at 512, 630 S.E.2d at 918. It is with this question in mind we conclude the more specific structured sentencing provisions govern.

A different ruling could effectively authorize—indeed, *require*—the trial court to enter a second illegal sentence if it made so much as an inadvertent counting error in the first.[5] That outcome would be at odds with the constitutional text, our

---

[5] Both dissents highlight the State's failure to appeal from the initial sentencing miscalculation. These are valid concerns: when a litigant does not appeal a final judgment, the unchallenged decision ordinarily binds subsequent proceedings in the same case. *See, e.g.*, *State v. Summers*, 351 N.C. 620, 622, 528 S.E.2d 17, 20 (2000) (explaining the rationales behind "[t]he companion doctrines of *res judicata* and collateral estoppel" (quoting *Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 421, 427, 349 S.E.2d 552, 556 (1986))). "When a fact has been *agreed upon or decided* in a court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed." *Id.* at 623, 528 S.E.2d at 20 (emphasis added) (quoting *King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E.2d 799, 805 (1973)).

Such limitations do not apply to the trial court's well-settled, inherent "power to correct its records to speak the truth," which includes the ability to correct "clerical errors." *State v. Cagle*, 241 N.C. 134, 139, 84 S.E.2d 649, 653–54 (1954) (collecting cases). A clerical error is one "resulting from a minor mistake or inadvertence *and not from judicial reasoning or determination.*" *Clerical Error*, *Black's Law Dictionary* (12th ed. 2024) (emphasis added). This was the sort of objective mistake the trial court made when it undercalculated defendant's initial sentence here. Because the trial court's error was not the product of judicial reasoning, the State's failure to appeal it did not trigger our usual law-of-the-case

precedent, and our basic logical intuition. *See, e.g.*, *Tirado*, 387 N.C. at 117, 911 S.E.2d at 62 (explaining that the state constitution's Cruel or Unusual Punishments Clause would have been understood at the time of its enactment "to protect against abuses of judicial power in the form of illegal and arbitrary sentencing practices"); *Roberts*, 351 N.C. at 327, 523 S.E.2d at 418 ("The General Statutes clearly provide that a sentence of unauthorized duration can be modified."); *Happel*, 387 N.C. at 206, 913 S.E.2d at 191 ("[W]e must reject [statutory] readings that defy our common sense.").

The facts of this case created the perfect storm. Because all the elements of the second judgment's lead felony were included in a prior offense, the trial court should have added another prior record point at defendant's first sentencing. Because the trial court should have added another prior record point at defendant's first sentencing, defendant should have been assigned ten total points then. Because defendant should have been assigned ten total points then, he should have been categorized as a prior record level IV offender. And because he should have been categorized as a prior record level IV offender, he should have been sentenced to a

---

doctrine. *See Cagle*, 241 N.C. at 139, 84 S.E.2d at 653 (noting that the trial court is not entitled to correct "errors of law"); *State v. Jarman*, 140 N.C. App. 198, 203, 535 S.E.2d 875, 879 (2000) (holding that the trial court could correct its earlier "mechanical and routine, though mistaken, application of a statutory mandate"). *Cf. Summers*, 351 N.C. at 622, 528 S.E.2d at 20 ("[The trial court] made findings of fact supporting [its] conclusion of law . . . and, *on that basis*, dismissed the revocation order. The State did not appeal the trial court's ruling, which accordingly became the law of the case." (emphasis added)).

minimum of thirty months for his commission of a Class E felony.

Taken as a whole, these circumstances led to an unusual but necessary outcome: the imposition of a harsher sentence on remand. The decision of the Court of Appeals is affirmed.

AFFIRMED.

Justice DIETZ dissenting.

I agree with the majority that "courts may not impose illegal sentences." Thus, in rare cases, a trial court could be required to impose a harsher sentence on remand despite the general statutory prohibition in N.C.G.S. § 15A-1335. But here, the original sentence is not illegal. This is where the majority misunderstands the import of the State's decision not to appeal that original judgment.

Like any other litigant, when the State has a right to appeal from a final judgment but does not do so, it is stuck with the trial court's legal ruling in that case. *Williams v. Asheville Contracting Co.*, 257 N.C. 769, 771 (1962). This is because, after entry of a final judgment, all legal matters for which no appeal is taken become what this Court has described as "the law of the case." *Id.* This form of law of the case is different from the more traditional form, which binds a lower court to a higher court's adjudication of legal issues in the case. *See State v. Lewis*, 365 N.C. 488, 504–05 (2012). Instead, this variant acts as a form of intra-case issue preclusion at all levels, prohibiting litigants from disputing legal rulings that they could have appealed after final judgment, but chose not to. *See Williams*, 257 N.C. at 771. In other words, as the Court of Appeals has succinctly explained, "when a party fails to appeal from a tribunal's decision that is not interlocutory, the decision below becomes 'the law of the case' and cannot be challenged in subsequent proceedings in the same case." *Boje v. D.W.I.T., L.L.C.*, 195 N.C. App. 118, 122 (2009).

Applying this precedent here, the miscalculated prior record level is not an *error* in the case, it is the *law* of the case because the State could have cross-appealed and challenged the mistaken prior record level calculation. When the State chose not to do so, that portion of the trial court's judgment became the law of the case and binding in further proceedings.[1] *Id.* As a result, the trial court was required to adhere to N.C.G.S. § 15A-1335 and impose the same sentence on remand because the initial sentence was not an illegal one as between the parties in this case.

My dissenting colleagues generally agree that the State cannot challenge the initial sentence, but they reach this conclusion on the ground that the State's argument is not preserved for appellate review. I think preservation is a more difficult approach here because, by statute, an error in calculating a defendant's prior record level is automatically preserved for appellate review "even though no objection or motion has been made in the trial division." N.C.G.S. § 15A-1446(d) (2025). Now, to be fair, preservation is generally viewed as a procedural matter and, with respect to procedural matters, it is the Rules of Appellate Procedure, not the General Statutes, that control. *See* N.C. Const. art. IV, § 13(2). But there is also the reality that the State has prevailed at every stage of this case as it bounced between trial and appellate courts. As the appellee in all these appeals, the State doesn't really

---

[1] This variant of "law of the case" doctrine can be more complicated in criminal cases because criminal defendants are permitted in certain circumstances to collaterally attack a judgment against them even if they failed to appeal the judgment. *See*, *e.g.*, N.C.G.S. §§ 15A-1411 (motion for appropriate relief), 17-1 (2025) (habeas corpus). But with respect to the State, there are no exceptions to the general rule.

have any obligation to preserve its arguments. *See* N.C. R. App. P. 28(c); *Shore v. Brown*, 324 N.C. 427, 428 (1989).

In short, I do not view this as an issue *preservation* problem. Instead, it is an issue *preclusion* problem stemming from the State's choice not to appeal the trial court's initial final judgment, thus giving that judgment preclusive effect in all further proceedings in the same case. *See Williams*, 257 N.C. at 771. Because this preclusive effect means the trial court's initial sentence was not an unlawful sentence as between the parties in this case, I would reverse the decision of the Court of Appeals and remand for entry of the same sentence Thomas received following his initial conviction.

Justice RIGGS dissenting.

The majority admits at least one troubling part of its ruling: that, contrary to an explicit North Carolina statute prohibiting exactly this, a criminal defendant who successfully appealed his original sentence will now receive a harsher punishment on remand. The disincentive this creates for litigants to appeal incorrect trial court rulings (and thus for the trust in our judicial system to be bolstered by the appellate review process) is significant. Further, it runs contrary to the constitutional principles underlying our legislature's decision to enact N.C.G.S. § 15A-1335 to codify the United States Supreme Court case in *North Carolina v. Pearce*, 395 U.S. 711 (1969), holding that states should be cautious in endorsing or allowing even the appearance of prosecutorial or judicial vindictiveness in sentencing following a successful appeal. Indeed, as is the legislature's right, it enacted a statute, N.C.G.S. § 15A-1335, which is even more protective than the United States Supreme Court decision it sets out to embody.

The overused saying that "bad facts make bad law" is particularly fitting here, where even a purportedly unusual or rare outcome like the one in this case will having lasting, broad, and predictable effects: our courts will punish a criminal defendant should he or she successfully appeal based on errors that a trial court made in the sentencing phase, even if the State itself does not appeal those initial errors and that initial sentencing becomes the law of the case. That outcome contradicts the plain language of N.C.G.S. § 15A-1335 and our structured sentencing laws, which

anticipate the interplay between and need to harmonize the two statutory frameworks. The majority holds that the trial court was required to modify Mr. Thomas's sentence to comply with our legislature's structured sentencing framework—but the majority identifies an unpreserved error in the initial sentencing. That is not an actionable error for us to correct.

The Structured Sentencing Act did not apply in the same way at Mr. Thomas's resentencing as it did in his initial sentencing. On remand, N.C.G.S. § 15A-1335 was triggered to cap the maximum sentence that Mr. Thomas could have been given and the new sentence could not exceed the original sentence. The trial court acting on remand was bound by our state's prohibition against a more severe sentence following a successful appeal. Thus, the majority, by acting improperly to correct an error not appealed or preserved, demands an unlawful sentence in violation of Mr. Thomas's due process rights. For those reasons, I respectfully dissent.

## I. Factual and Procedural Background

In July 2019, defendant Quantez Lashay Thomas was indicted for a string of vehicle-related offenses, credit card thefts, and attaining habitual felon status. On 17 February 2020, a jury found Mr. Thomas guilty of thirteen of the charged offenses plus attaining habitual felon status, and the trial court consolidated the convictions into two judgments. In the first judgment, the trial court consolidated convictions for felony larceny, breaking or entering a motor vehicle, two counts of obtaining property by false pretenses, possession of a stolen motor vehicle, and attaining habitual felon

status. The court sentenced Mr. Thomas as a prior record level III offender with nine prior record points to 67 to 93 months of imprisonment.

In the second judgment, the trial court consolidated convictions for two counts of breaking or entering a motor vehicle, three counts of financial card theft, two counts of misdemeanor larceny, and one count of misdemeanor fleeing to elude arrest with a motor vehicle. The court sentenced Mr. Thomas as a prior record level III offender with habitual felon status and nine prior record points to 26 to 44 months of imprisonment. The breaking or entering a motor vehicle conviction was punished as a Class E felony because of Mr. Thomas's habitual felon status. In total, Mr. Thomas was sentenced to 93 to 137 months.

Mr. Thomas appealed on grounds that the trial court erred by conducting a competency hearing at the same time as the arraignment hearing and constitutionally erred by failing to advise him of all the permissible punishments for the charges against him. *State v. Thomas (Thomas I)*, No. COA20-814, slip op. at 7 (N.C. Ct. App. Feb. 15, 2022) (unpublished). On 15 February 2022, the Court of Appeals issued its unanimous opinion, concluding that Mr. Thomas was not properly advised of the maximum punishment he faced during a required waiver of counsel inquiry. *Id.* at *12. That is, the Court of Appeals recognized that Mr. Thomas's Sixth Amendment rights were violated, recognized the error was prejudicial, and awarded him a new trial. *Id.* at *9–14. The State did not appeal.

Mr. Thomas's second trial was conducted beginning on 15 August 2022. Before

the start of trial, the State voluntarily dismissed one count of financial transaction card fraud and one count of obtaining property by false pretenses. At the close of the State's evidence, it voluntarily dismissed one count of misdemeanor larceny and two counts of obtaining property by false pretenses. Upon Mr. Thomas's motion to dismiss, the court dismissed one count of financial transaction card theft and reduced the felony larceny charge to a misdemeanor.

The jury found Mr. Thomas guilty of eight of the charged offenses and of having attained habitual felon status. It found him guilty of misdemeanor rather than felony fleeing to elude arrest and returned a verdict of not guilty for misdemeanor larceny. So, after his second trial, Mr. Thomas was convicted of five fewer offenses, and one of the offenses was less severe than at his first trial. On 19 August 2022, the trial court again consolidated the convictions into two judgments. In the first judgment, the trial court consolidated one conviction for breaking or entering a motor vehicle and one conviction for possession of a stolen motor vehicle, which was punished as a Class D felony because of his habitual felon status. The court sentenced him as a prior record level III offender with nine prior record points to 67 to 93 months.

In the second judgment, the trial court consolidated two counts of financial card theft, three misdemeanors, and the second breaking or entering a motor vehicle conviction, which was punished as a Class E felony because of his habitual felon status. The State argued that the same elements of this breaking or entering conviction were included in one of Mr. Thomas's prior offenses. Specifically, Mr.

Thomas had previously been convicted of felony breaking or entering a motor vehicle and misdemeanor attempted financial card theft, among other offenses. This situation would trigger an additional record point pursuant to N.C.G.S. § 15A-1340.14(b)(6). The court accepted this argument and added the additional point, raising Mr. Thomas's prior record points to ten. That placed him at a prior record level IV offender for sentencing, and he was sentenced to 30 to 48 months. In total, after being resentenced, Mr. Thomas was sentenced to 97 to 141 months.

Thus, on remand and after Mr. Thomas's successful appeal, the court increased his minimum sentence by four months and his maximum sentence by four months. Mr. Thomas appealed. On 6 August 2024, the Court of Appeals issued its opinion, finding no error as to the denial of Mr. Thomas's motion to dismiss, the admission of lay opinion testimony by an officer, and Mr. Thomas's harsher sentence on remand. *State v. Thomas*, 295 N.C. App. 269, 280 (2024).

Mr. Thomas petitioned this Court for discretionary review, arguing that the new sentence imposed, which was harsher than the original sentence, violated N.C.G.S. § 15A-1335 and this Court's decision in *State v. Wagner*, 356 N.C. 599 (2002). We allowed Mr. Thomas's petition.

## II. Discussion

This case centers on the interplay between N.C.G.S. § 15A-1335 and North Carolina's structured sentencing statutes. *See* N.C.G.S. § 15A-1335 (2025); N.C.G.S. §§ 15A-1340.10 to -1340.23 (2025). The State argued, and the majority holds, that

Mr. Thomas's sentence on remand was statutorily mandated by the Structured Sentencing Act and therefore proper under N.C.G.S. § 15A-1335. That is not an accurate reading of the relevant statutes. While the trial court did err during Mr. Thomas's first sentencing, a different statutory framework applied to Mr. Thomas's resentencing after his successful appeal—both N.C.G.S. § 15A-1335 and the Structured Sentencing Act applied, unlike during his first sentencing, when only the Structured Sentencing Act applied. Our structured sentencing framework anticipates that other applicable statutes may require or authorize a different sentence. *See* N.C.G.S. § 15A-1340.13(b). The applicable statute in Mr. Thomas's case was N.C.G.S. § 15A-1335, and the trial court on remand was bound by N.C.G.S. § 15A-1335 to not impose a more severe sentence, even if it made a mistake on its first try.

Further, the State did not appeal this error and thus did not preserve this issue for appeal. The State's unpreserved assignment of error, the trial court's mistake in initial sentencing, is not one for this Court now to correct. The State had an opportunity to address the initial sentencing error but chose not to appeal to seek a review of the error now identified. Therefore, to the extent that Mr. Thomas's original maximum sentence was in error, it was not preserved for appeal, rendering our review of the issue improper.

Under N.C.G.S. § 15A-1340.13(b), "the court shall determine the prior record level for the offender pursuant to G.S. 15A-1340.14." Subsections 15A-1340.14(a) and

(b) direct courts how to calculate a defendant's prior record level. If all the elements of the present offense are included in any prior offense for which the offender was convicted, whether or not the prior offense was used to determine the defendant's prior record level, the statute mandates that sentencing judges add one point. N.C.G.S. § 15A-1340.14(b)(6). Trial judges use a defendant's allocated points to determine his prior record level, which correspond to structured sentencing guidelines. N.C.G.S. § 15A-1340.14(c).

The structured sentencing framework is comprehensive, but its language does not suggest that it supersedes all other statutes. In fact, just the opposite is true: the Structured Sentencing Act explicitly anticipates the applicability of other statutes. Subsection 15A-1340.13(b) further provides that "[t]he sentence shall contain a sentence disposition specified for the class of offense and prior record level, and its minimum term of imprisonment shall be within the range specified for the class of offense and prior record level, *unless applicable statutes require or authorize another minimum sentence of imprisonment.*" N.C.G.S. § 15A-1340.13(b) (emphasis added). If our legislature did not intend for any other statute to apply or supersede the structured sentencing guidelines, then it would not have included the language "unless applicable statutes require or authorize another minimum sentence of imprisonment." *See id.* The legislature thus expressly provided for other statutes to require or authorize a different minimum sentence, one that falls outside of the mandated framework.

Section 15A-1335 of the General Statutes states:

> When a conviction or sentence imposed in superior court has been set aside on direct review or collateral attack, the court may not impose a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence less the portion of the prior sentence previously served. This section shall not apply when a defendant, on direct review or collateral attack, succeeds in having a plea of guilty vacated.

N.C.G.S. § 15A-1335.

Section 15A-1335 was enacted after the United States Supreme Court's decision in *North Carolina v. Pearce*, 395 U.S. 711 (1969), where the Supreme Court held that imposing a longer sentence for the same offense upon retrial was unconstitutional, reasoning that vindictiveness on the part of the sentencing judge, or fear of vindictiveness on behalf of the appellant, may deter a defendant's exercise to his right to appeal, violating that defendant's due process rights. *Id.* at 725.

North Carolina's legislature adopted the general rule of *Pearce*. *See* N.C.G.S. § 15A-1335, Official Commentary. But our legislature's response to *Pearce* went a step further: our statutes prohibit a harsher sentence on remand even when factors supporting such a sentence are in the record. *See id. (*noting that the statute "does not allow a more severe sentence even if intervening factors would argue for a more severe sentence, as the *Pearce* decision permits")*; see also State v. Hemby*, 333 N.C. 331, 334–35 (1993); *State v. Swimm*, 316 N.C. 24, 31–33 (1986); *State v. Mitchell*, 67 N.C. App. 549, 551 (1984) ("North Carolina has changed that part of . . . [*Pearce*]

which would have allowed a more severe sentence . . . ."). Additionally, the North Carolina Criminal Code Commission explained that the meritorious exceptions to a rule prohibiting a more severe sentence would be so rare as to not merit even trying to draft an exception. *See* N.C.G.S. § 15A-1335, Crim. Code Comm'n Commentary ("The Commission felt that the circumstances under which this exception to the rule would apply are so rare as to not merit the difficulty of drafting an intelligible statement of the exception."). That legislative body communicated an intent consistent with this dissent's interpretation, and the legislature intended its plain language directive should apply.[1]

The Court of Appeals has had even more opportunity to deal with cases involving issues arising under N.C.G.S. § 15A-1335. From those, we know that a sentence is more severe when it is an increased sentence from the original. *See, e.g.*, *State v. Daniels*, 203 N.C. App. 350, 352–54 (2010) (holding that the defendant's resentencing violated N.C.G.S. § 15A-1335 because the trial court imposed a sentence

---

[1] The majority defends its approach as textualist, not literalist, and argues that context is important to ensure a non-absurd result. I agree with the latter proposition, to be sure. But context here supports an interpretation that the General Assembly embraced the meaning of its chosen words. Looking to context, the General Assembly created a more protective rule in response to a United States Supreme Court decision emphasizing the constitutional problem of punishing a defendant who successfully appeals an error.. *See* N.C.G.S. § 15A-1335, Official Commentary. And the comment from the Criminal Code Commission confirms that the drafters could not even contemplate an exception to the section 15A-1335 prohibition that would justify an attempt to draft an exception. *See* N.C.G.S. § 15A-1335, Crim. Code Comm'n Commentary. This context, taken with the plain language, makes the "perfect storm" described by the majority simply a judicial workaround to a clear and unambiguous statute that creates some protection for a criminal defendant's constitutional rights.

of an additional 63 to 75 months for the same conviction). And while the resentencing court can change how convictions are consolidated, that court is still bound by N.C.G.S. § 15A-1335 to not impose a more severe sentence. *See State v. Ransom*, 80 N.C. App. 711, 713 ("While G.S. 15A-1335 prohibits trial courts from imposing stiffer sentences upon remand than originally imposed, nothing prohibits the trial court from changing the way in which it consolidated convictions during a sentencing hearing prior to remand."), *cert. denied*, 317 N.C. 712 (1986).

That is not to say that a resentencing court cannot identify new or different aggravating factors, but our precedent has respected the limits created by N.C.G.S. § 15A-1335; the new sentence may not be longer than the original. *See Hemby*, 333 N.C. at 334 ("Although a trial judge may find altogether new aggravating and mitigating circumstances at a resentencing hearing . . . , such findings cannot justify a sentence which is more severe than the original sentence imposed on the same offense[ ]."); *see also Swimm*, 316 N.C. at 32–33 (holding that the defendant's good behavior while in prison between initial incarceration and resentencing may constitute a mitigating factor, and the defendant's bad conduct during this period may be found as an aggravating factor to be used in determining whether to impose a sentence not greater than the one originally imposed).

This Court's decision in *Wagner*, 356 N.C. 599, established that N.C.G.S. § 15A-1335 is a statute to which N.C.G.S. § 15A-1340.14 is expected to yield. The majority's position cannot be reconciled with this precedent. In *Wagner*, the defendant pleaded

guilty and received a sentence of 101 to 131 months for attempted possession of cocaine as a habitual felon. 356 N.C. at 600. After a successful motion for appropriate relief, his plea and judgment were set aside. *Id.* However, upon retrial, he received a harsher sentence of two consecutive sentences of 135 to 171 months. *Id.* at 600–01. On appeal, the Court of Appeals found no error. *Id.* at 601. Relying on N.C.G.S. § 15A-1335, this Court reversed the defendant's judgment for attempted possession of cocaine and remanded the case for resentencing. *Id.* at 601–03. We held the defendant was improperly sentenced because he could not receive a more severe sentence for the same offense or conduct on remand, even when the original conviction resulted from a negotiated guilty plea. *Id.* at 602.[2]

The majority states that *Wagner* does not apply because Mr. Thomas's case involves the trial court correcting an earlier mistake sentencing Mr. Thomas *outside* the range of permissible punishment whereas *Wagner* involved sentencing the defendant *within* the range permitted by statute. The majority explains that *Wagner* did not involve the application of section 15A-1335 in nondiscretionary matters, such as the Structured Sentencing Act, whereas the sentence imposed on Mr. Thomas here was mandatorily imposed. But that is wrong because at its core, *Wagner* clarified

---

[2] In 2013, the North Carolina General Assembly modified N.C.G.S. § 15A-1335 in S.L. 2013-385 to clarify that the statute does not prohibit a harsher sentence on remand when a defendant succeeds in having a guilty plea vacated. *See* Act of Aug. 23, 2013, S.L. 2013-385, § 3, 2013 N.C. Sess. Laws 1594, 1595. In other words, the statute's protection does not apply when the original sentence was entered pursuant to a defendant's guilty plea rather than after conviction by a jury.

when section 15A-1335 acted to supersede the Structured Sentencing Act's guidelines, and this Court concluded that that the structured sentencing framework yields to section 15A-1335 where there is a conflict. 356 N.C. at 601–02. The two statutes cannot be viewed in isolation. As we opined in *Wagner*, "N.C.G.S. § 15A-1335 is an applicable statute requiring 'another minimum sentence of imprisonment.' " *Id.* at 602 (quoting N.C.G.S. § 15A-1340.13(b) (2001)). Faithfully applying this precedent, it follows that section 15A-1335 would remain an applicable statute displacing subsection 15A-1340.13(b), requiring that Mr. Thomas's new sentence not exceed the original.

By imposing a lengthier term of imprisonment upon resentencing after a successful appeal, the trial court in Mr. Thomas's case violated N.C.G.S. § 15A-1335, but the court easily could have complied with both section 15A-1335 and the Structured Sentencing Act. The Court of Appeals was correct that the trial court erred under N.C.G.S. § 15A-1340.14 when the lower court initially sentenced Mr. Thomas pursuant to the second consolidated judgment. Because the trial court made the second felony breaking or entering a motor vehicle the lead offense, the court should have sentenced Mr. Thomas as a level IV offender instead of a level III. Mr. Thomas's previous convictions for breaking or entering a motor vehicle meant that the court should have added the "same elements" bonus point under N.C.G.S. § 15A-1340.14(b)(6). Subsection (b)(6), like the rest of those in the N.C.G.S. § 15A-1340.14(b), is non-discretionary according to the statute's plain language.

*See* N.C.G.S. § 15A-1340.14(b).

The second trial court, in its discretion, could have consolidated the second judgment under the credit card fraud charge, another equally serious Class I felony, instead of breaking or entering a motor vehicle. N.C.G.S. §§ 14-56(a2)(5), 14-113.9(b), 14-113.17(b) (2025). Doing so would have harmonized both N.C.G.S. § 15A-1335 and the statutory sentencing mandates set out in N.C.G.S. § 15A-1340.14. Instead, the second trial court sentenced Mr. Thomas to a harsher sentence on remand, thereby running afoul of the protection N.C.G.S. § 15A-1335 sets out to provide criminal defendants.

The majority holds that the second trial court "corrected its mistake" by imposing the proper punishment after Mr. Thomas's second trial because it was "required to modify" Mr. Thomas's sentence to comply with our sentencing framework. I disagree. The record indicates that, during the second sentencing hearing, the second trial court did not consider its obligations under section 15A-1335, nor did it seek to "correct" a mistake in Mr. Thomas's previous sentence. No reference was made by the second trial court nor the State about correcting a mistake made by the first trial court. It seems that the second trial court was not aware of either obligation when it entered the new sentence. The Court of Appeals also failed to refer to or analyze *Wagner* at all in its opinion, suggesting a further misapprehension of the law.

The majority does not address the fact that the State had the opportunity to

appeal that mistake prior to Mr. Thomas's resentencing and did not do so. To the extent that the State now argues the resentencing court was "required to modify" Mr. Thomas's sentence to comply with our sentencing framework, we note that the State raised that argument for the first time in its brief to the Court of Appeals. The State's right to appeal in criminal cases is much more limited than a defendant's right to appeal, but a miscalculation of a prior record level and the imposition of an unauthorized sentence are inarguably two of the rare instances where our legislature expressly permits the State to appeal. *See* N.C.G.S. § 15A-1445(a)(3) (2025) (authorizing the State to appeal when the sentence contains a type of disposition or duration of imprisonment not authorized under the structured sentencing framework).

We have consistently applied Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure to defendants, requiring an appellant to raise a specific issue before the trial court to preserve the issue for appellate review. N.C. R. App. P. 10(a)(1); *see, e.g., State v. Valentine*, 357 N.C. 512, 525 (2003) ("The failure to raise a constitutional issue before the trial court bars appellate review."); *State v. Smith*, 352 N.C. 531, 557 (2000) (holding that the defendant waived his right to appellate review of an alleged due process violation "because he failed to raise it as constitutional error before the court"), *cert. denied*, 532 U.S. 949 (2001). We held in *State v. Bell* that "[i]t is well settled that an error, even one of constitutional magnitude, that defendant does not bring to the trial court's attention is waived and will not be considered on

appeal." 359 N.C. 1, 28 (2004) (quoting *State v. Wiley*, 355 N.C. 592, 615 (2003)). In *Bell*, the defendant failed to raise an issue at trial and failed to properly raise double jeopardy in his assignments of error. *Id.* The trial court transcript cited in that case made no mention of double jeopardy, and we explained that "[o]ur scope of appellate review is limited to those issued set out in the record on appeal." *Id.* (quoting *State v. Hamilton*, 351 N.C. 14, 22 (1999)). In *State v. Bursell*, the transcript of a sentencing hearing revealed that the defendant did not clearly raise a constitutional issue, and we explained that he thereby waived the ability to raise that issue on appeal. 372 N.C. 196, 200 (2019).

We have applied the rule requiring an appellant to raise a specific issue to preserve the issue for appellate review against the State as well. *See State v. Cooke*, 306 N.C. 132, 136 (1982) (holding the State waived challenge to trial court's finding on appeal by failing to enter an argument to justify a warrantless search and specific assignment of error in the record). In *Cooke*, we acknowledged that it would "clearly be unfair to the defendant" to allow the State to raise an unpreserved theory to justify a warrantless search on appeal while conversely denying the defendant the ability to raise an unpreserved objection to the admission of evidence on appeal. *Id.* at 137 (cleaned up).

We consistently decline to address unpreserved issues, most commonly when raised by defendants, and we should not decide differently when it is the State that failed to appeal or otherwise properly preserve a sentencing error. Following the

State's failure to appeal the initial sentence, this unpreserved error cannot be corrected now. And because the initially erroneous sentence was not preserved for appeal, N.C.G.S. § 15A-1335 applied on remand to cap the maximum sentence that applied to Mr. Thomas following his appeal. Engaging in the correction of unpreserved error would contradict the well-settled procedural rule that appellate courts may not address issues not raised by the parties because "it is not the role of the appellate courts to create an appeal for an appellant." *See Bottoms Towing & Recovery, LLC v. Circle of Seven, LLC*, 386 N.C. 359, 363 (2024) (quoting *In re R.A.F.*, 384 N.C. 505, 512 (2025)).

Appellate courts may employ Rule 2 and suspend any part of the Appellate Rules "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest" except when prohibited by other Rules. N.C. R. App. P. 2. In *State v. Bursell*, we inquired whether the Court of Appeals properly invoked Rule 2 to review the defendant's unpreserved argument. 372 N.C. at 200–01. However, we apply Rule 2 cautiously and in exceptional circumstances. *Id.* (cleaned up). The Court of Appeals in *Bursell* had invoked Rule 2 because the error in that case, as the State even conceded, related to a substantial right. *Id.* at 201. Here, the Court of Appeals below did not invoke Rule 2 to allow it to address the unappealed sentencing error.

The majority further contends that the trial court "has the [inherent] power to correct its records to speak the truth," which includes the ability to rectify clerical errors, and it identifies this error as clerical. (alteration in original) I again disagree.

While a trial court has the inherent power to correct its records to speak the truth, which includes the ability to rectify clerical errors, the error here is a legal error, involving judicial reasoning and determination. *See State v. Ransom*, 74 N.C. App. 716, 719 (1985) (holding that it was not the correction of a clerical error for the court to change a judgment so that the sentence could be enhanced by ten years). In *State v. Cannon*, this Court held that a court may not amend a judicial error "under the guise of an amendment of its records." 244 N.C. 399, 404 (1956). In addressing whether the trial court had the power to correct court transcripts, or "the minutes of the term," *see id.* at 402, this Court explained the trial court's authorization to amend an error is to make a record correspond to the facts, not to incorporate anything in the record except a recital of what occurred, *id.* at 404. Here, the State did not raise the sentencing error as an issue until after Mr. Thomas was resentenced and appealed the longer sentence. Then, for the first time, the State acknowledged the trial court had made a miscalculation in Mr. Thomas's initial sentence.

Where there has been uncertainty as to whether an error was "clerical," this Court has opted to "err on the side of caution and resolve [the discrepancy] in the defendant's favor." *State v. Morston*, 336 N.C. 381, 410 (1994); *see also id.* at 411 (remanding the case for resentencing). In *Morston*, a trial court used the same evidence to prove two aggravating factors in the sentencing phase of a trial, which ran afoul of the Fair Sentencing Act in place at the time. *Id.* at 409. The State argued that the indication on the sentencing form for one of the aggravating factors—which

indicated it had been found to exist—was merely a clerical error. *Id.* at 410. This Court explained that even so, "the better course is to err on the side of caution and resolve in the defendant's favor the discrepancy between the trial court's statement in open court, as revealed by the transcript, and the sentencing form." *Id.* at 410. Similarly, here, I would hold that the State's failure to object on the record to the trial court's sentencing error—which it had the right to do before Mr. Thomas's original sentence became the law of the case—resulted in a error that should be resolved in Mr. Thomas's favor.

### III.    Conclusion

The majority's analysis rests on numerous layers of error. We cannot treat the State differently than we treat defendants when it comes to holding them to the consequences of a failure to preserve issues on appeal, and the majority cannot ignore the plain language and intent of legislative enactments because following the plain language and intent does not lead the majority to a result it desires.

Two of the majority's principal arguments for arriving at a conclusion contrary to the plain language of section 15A-1335 lack merit. Looking to what should have happened at the trial court, then, the violation of section 15A-1335 was avoidable. The trial court had the discretion to consolidate the two judgments to allow it to adhere to both section 15A-1335 and the Structured Sentencing Act.

Imposing on Mr. Thomas a greater sentence after a successful appeal punishes him for a mistake made not by him, but by the trial court. It further allows the State

to escape the consequences of a failure to appeal a lower court's error. The implication of the majority's decision today is that if Mr. Thomas had not chosen to exercise his right to appeal, he would be serving a shorter sentence. In light of the statutory purpose of N.C.G.S. § 15A-1335, it does not matter if the trial court made a "mistake" in sentencing Mr. Thomas the first time—N.C.G.S. § 15A-1335 bars a more severe sentence after appeal, whether that more severe sentence results from correcting a mistake or from the exercise of a trial court's discretion. To hold otherwise would chill defendants' exercise of their constitutional rights.

This Court is not an error-correcting court. Nor should we ignore N.C.G.S. § 15A-1335's bar against a higher sentence after appeal by applying the sentencing provisions in N.C.G.S. § 15A-1340.14 in isolation. Applying these principles, Mr. Thomas's original sentence of 93 to 137 months should stand as the maximum range to which he can be sentenced. That maximum was exceeded by the trial court on remand when it increased Mr. Thomas's minimum sentence by four months and maximum sentence by four months. This outcome was, contrary to what the majority suggests, unnecessary and contrary to what our legislature intended when it codified N.C.G.S. § 15A-1335. I therefore respectfully dissent from the majority's decision.

Justice EARLS joins in this dissenting opinion.